GARWOOD, Circuit Judge,
dissenting, joined by E. GRADY JOLLY, EDITH H. JONES, JERRY E. SMITH, EMILIO M. GARZA, and DeMOSS, Circuit Judges (except that EDITH H. JONES, JERRY E. SMITH, and DeMOSS, Circuit Judges, do not join in the second paragraph of footnote two):
This case involves an accident on an American-owned jack-up rig undergoing repairs in a United Arab Emirates (UAE) port in which the American plaintiff is an employee of the UAE company hired by the rig’s owner to perform the repairs. The plaintiff, Coats, and the rig owner, Penrod, were each found twenty percent at fault, and the plaintiffs employer, MIS, sixty percent. The rig owner, cast in judgment for eighty percent of plaintiffs damages, contends that its liability to the plaintiff should not exceed fifty percent of his total damages, as their fault was equal. I agree, largely for the reasons stated in my dissent in Simeon v. T. Smith & Son, Inc., 852 F.2d 1421, 1436-38 (5th Cir.1988), cert. denied, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). The subject matter of this suit plainly is not within the scope of the Longshoremen’s and Harbor Workers’ Compensation Act (LHWCA), 33 U.S.C. § 901 et seq., the Jones Act, 46 U.S.C.App. § 688, or the Death on the High Seas Act (DOHSA), 46 U.S.C.App. § 761 et seq.[1] Accordingly, — assuming United States law applies at all[2] — the governing law is the general maritime law of the United States.
*1145 Overview of the Issue
The archetypal general maritime law tort litigation is the collision case.
Assume that a shrimper, under the command of its master-owner, and an Exxon crew boat collide while each is trying to avoid a suddenly appearing small pleasure craft. Only the crew boat suffers significant damage.[3] Each vessel is under separate ownership and acting independently of the others, and none is so related to either of the others as to be vicariously liable for the other’s fault. If only the shrimper and crew boat are eausatively at fault, and their fault is equal, the shrimper is liable for half the crew boat’s damages. Should the amount for which the shrimper is ultimately liable to the crew boat change if the small pleasure craft is also found to have been eausatively at fault (e.g., lacking adequate lights) equally with the other two vessels? Simple logic tells us it should not. The crew boat’s damages remain the very same, the fault of the shrimper and of the crew boat are each still a proximate cause of all such damage, and the causative fault of the crew boat and shrimper remain equal to each other. As the pleasure craft has acted independently of the crew boat and shrimper, neither of which is vicariously liable for the pleasure craft’s wrongs, there is no basis on which to charge the pleasure craft’s fault to either the shrimper or the crew boat, and hence, for purposes of the shrimper’s ultimate responsibility to the damaged crew boat, the relevant comparative fault is that as between those two.
However, this straightforward approach is opposed at two opposite extremes. At one extreme is that approach generally known as pure several liability, in which all of the pleasure craft’s fault is charged to the crew boat, so that — despite the crew boat’s dam-
ages not having decreased, its share of the total fault having decreased, and the shrimper remaining equally at fault with it — the shrimper is nevertheless hable for only a third — not a half — of the crew boat’s damages. At the other extreme is the majority’s approach here — pure joint liability reflexively, and rather oxymoronieally, applied in a case where recovery depends on comparative fault — which charges all of the pleasure craft’s fault to the shrimper, so that the shrimper’s total exposure to the crew boat goes up from one-half to two-thirds of the crew boat’s damages, even though the damages remain identical, the relative fault as between the crew boat and shrimper is unchanged, and the shrimper’s percentage of the total negligence has gone down.
The majority’s approach leads to the absurdity that in certain situations a slightly negligent defendant could nevertheless be hable for ninety percent of the damages of a plaintiff whose negligence proximately causing ah those damages was ten times as great as the negligence of that particular defendant.[4] That is the very same kind of absurdity that caused most common law jurisdictions to abandon the doctrine that the plaintiffs contributory negligence barred ah recovery, even though such negligence was minimal and far less than that of the defendant.
Of course, until the relatively recent arrival of pure several liability in many jurisdictions, a negligent defendant was traditionally hable to a non-neghgent plaintiff for all the latter’s damages proximately caused by that defendant’s neghgence, notwithstanding that an independent third party’s fault may also have proximately caused ah those same damages. See Prosser and Keeton on Torts *1146 (West 5th ed. 1984) § 47.[5] This rule, however, does not afford a principled justification for rejecting the approach espoused in this dissent. The result in the just-mentioned instance comes about only because none of the plaintiffs damages are proximately caused by the plaintiffs fault and all are proximately caused by the defendant’s. The logic of such a regime, however, dictates that the plaintiff whose contributory negligence proximately causes all his damages may recover nothing, even though a defendant’s much greater fault may also have been a proximate cause of all plaintiffs damages. And that indeed was the almost universal common law rule. Relatively recently, dissatisfaction with this result led most common law jurisdictions to abandon the contributory negligence bar in favor of some form of comparative negligence. Under such an approach, there arises the question of what the plaintiffs negligence is compared to and how the comparison is to be made. The question, of course, does not arise if the plaintiff is not negligent (nor, obviously, does it arise if no defendant is at fault). If the plaintiff and one defendant are the only ones guilty of causative fault, the obvious and universally accepted answer is that the fault of each is compared to that of the other. A question arises if, but only if, both the plaintiff and a defendant are guilty of causative fault and so also is at least one other independent actor (whether or not that actor is likewise a defendant). In that relatively rare setting, apportioning all of the other (or third) independent actor’s fault to the defendant may not be logically justified by the principle that every party is responsible for all the proximate results of his own fault, even though such results are also contributed to by the fault of another, because that principle equally well justifies apportioning all the other actor’s fault to the contributory negligent plaintiff, and also because, in any event, where comparative fault is applied the above-referenced principle has been abandoned both by allowing the contributorily negligent plaintiff to recover at all and by limiting his recovery to less than the full amount of the loss he suffered.[6]
As University of Chicago law professor Charles Gregory explained nearly sixty years ago:
*1147 “At common law joint tortfeasors are virtually guarantors of each other’s solvency so far as concerns the injured plaintiffs joint judgment for damages; and the introduction of contribution between joint tortfea-sors does not affect that situation in the slightest degree. The plaintiff receives his damages at all costs, leaving the defendants to even up the loss between themselves if and as they may and can. But under a comparative negligence statute, where the plaintiff, although negligent, may still recover, the situation is fundamentally different. Here absolutely no reason exists why the defendants, even if they are treated as joint tortfeasors and thus subjected to joint judgment liability for certain purposes, should be made to assume the entire risk of each other’s insolvency with respect to plaintiffs recoverable damages. For when the plaintiff and the solvent tortfeasor are both negligent, they share the stigma which at common law seems to have furnished the justification for the somewhat arbitrary allocation of this risk on joint judgment debtors. Furthermore, it is quite possible to have a plaintiff who is as negligent as, or more negligent than, either of his defendants, but is still entitled to recover. Under such circumstances, it seems idle to suppose that a joint liability to the plaintiff should carry absolutely the same incidents as the common-law joint judgment; and distribution of the risk of insolvency of one of the joint defendants in accordance with the apportionment of fault would seem to be the only method of administration consistent with the terms of the comparative negligence statute.” C. Gregory, Legislative Loss Distribution in Negligence Actions 142 (1936) (footnote omitted).
It is true that, by virtue of the modern availability of contribution, which was generally not available at common law, see Prosser and Keeton on Torts (West 5th ed. 1984) § 50, a particular defendant to whom all an independent third actor’s fault is charged, rather than shared proportionately with the negligent plaintiff, suffers an ultimate economic injustice only if he is unable to realize adequate recovery of contribution from the third actor. Such a recovery would be unavailable if that third actor were insolvent, enjoyed some legal immunity, or could not be found. Thus, in one sense, as observed in the above quotation from Gregory, the issue is how the risk of the third actor’s insolvency, immunity, or lack of amenability to process should be borne: should it be borne entirely by the defendant, as the majority would have it; or should it be borne entirely by the negligent plaintiff, as under pure several liability; or should it be borne by the negligent plaintiff and defendant in the ratio that their respective degrees of fault bear to each other, as espoused here and by Professor Gregory. But in another sense, the question is why should the defendant ever be liable to the plaintiff for a greater proportion of plaintiffs damages than the defendant’s negligence (including any for which he is vicariously liable) is of the total negligence of the plaintiff and that defendant (again, including any for which he is vicariously liable).
Development in Common Law Jurisdictions
As previously observed, at common law what we now call “joint liability” was predicated either on concerted action (or vicarious liability) or on the principle that the defendant is liable for all consequences proximately caused by his own wrongful acts, even though the wrongful conduct of one other than the plaintiff was also a proximate cause of the harm (see notes 5 & 6, supra). There was no occasion to consider the application of these rules to instances where the plaintiffs negligence was a proximate cause of his damages, because such a plaintiff was barred from any recovery.
This was the virtually uniform rule in the United States until 1908, when the Federal Employees Liability Act (FELA), 45 U.S.C. § 51 et seq., was enacted. Act of April 22, 1908, c. 149, 35 Stat. 65-66. The FELA provided interstate railroad employees a cause of action against their employer for injuries in the course of employment caused by the railroad’s negligence and provided that “the fact that the employee may have been guilty of contributory negligence should not bar a recovery, but the damages shall be diminished by the jury in proportion to the *1148 amount of negligence attributable to such employee.” 45 U.S.C. § 53. Thereafter, in 1910 Mississippi enacted a “pure” comparative negligence statute. V. Schwartz, Comparative Negligence (Michie 3rd ed. 1994), § l-4(b)(2). In 1913 Georgia, through a combination of judicial decision and much earlier legislation applicable to those injured in railroad operations, adopted “a rule that the plaintiff in all cases may recover an apportioned part of his damages if the defendant’s negligence is greater than the plaintiffs.” Id,., § l-5(a)(2) at 19 (citing Elk Cotton Mills v. Grant, 140 Ga. 727, 79 S.E. 836 (1913)). Also in 1913, Nebraska by legislation allowed diminished recovery where the plaintiffs negligence was slight in comparison to the defendant’s. Id., § 1^4(b)(4) at 15. So matters stood until 1920, when Congress enacted the Jones Act, providing “any seaman” injured “in the course of his employment” an action against his employer in which the FELA would apply.[7] The same year, DOHSA was enacted, providing a cause of action for death wrongfully caused “on the high seas,” 46 U.S.C. § 761, in which the decedent’s negligence did “not bar recovery” but “the court shall take into consideration the degree of negligence attributable to the decedent and reduce the recovery accordingly.” 46 U.S.C. § 766. No other jurisdiction adopted comparative negligence until in 1931 Wisconsin passed legislation allowing a plaintiff recovery if his negligence was “not as great at that of the defendant.” Schwartz, supra, § 1 — 4(b)(3).
Thus, in 1909 all states generally applied the complete bar of contributory negligence; by 1930 only three states had lifted the bar to any extent; by 1940 only four had; by 1954 only five;[8] and, as late as 1968, only seven states and Puerto Rico had any form of comparative negligence.[9] Then the rush to some form of comparative fault began, so that now in only Alabama, Maryland, North Carolina, Virginia, and the District of Columbia does plaintiffs negligence, no matter how slight, bar any recovery whatever. Schwartz, supra, § 1-1 at 2.4, § l-5(e)(3); McIntyre v. Balentine, 833 S.W.2d 52, 55 (Tenn.1992). This was accomplished by judicial decision in twelve states, and by legislation in thirty-four states. McIntyre at 55, 56 & ns. 3 & 4.
The results are summarized in Kionka, Recent Developments in the Law of Joint and Several Liability and the Impact of Plaintiffs Employers’ Fault, 54 La.L.Rev. 1619 (1994):
“Four states still do not have comparative fault ..., and they retain joint and several liability. Of the forty-six states that have some form of comparative fault, ten states still have the pure form of joint and several liability, and twelve states now have pure several liability. The remaining twenty-four states, ... have some mixture of joint and several and several liability. These statutory schemes can be quite complex. The common thread, however, is that they all represent a compromise position between the two extremes — pure joint and several liability on the one hand and pure several liability on the other.” Id. at 1621 (footnotes omitted).
In other words, eighty percent of the states reject the rule espoused by the majority, “pure” joint and several liability in a system of comparative fault. The ten states that follow that approach are outnumbered by the twelve states at the other extreme, which follow “pure” several liability. The remaining twenty-four states have, indeed, adopted a variety of approaches, but, as Kionka observes, a “common thread” runs through *1149 them, as “all represent a compromise position between the two extremes.” Id.
One such position between the two extremes is that of the Uniform Comparative Fault Act (UCFA) approved by the National Conference of Commissioners on Uniform State Laws in 1977. 12 U.L.A. at 42-60 (West Supp.1994).[10] Section 1 of the UCFA provides that “fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages ... but does not bar recovery,” and section 6 provides that the claimant’s recovery is also reduced by the percentage of fault of any party with whom the claimant has settled. Sections 3, 4, and 5 deal with set-off and contribution. Section 2 is the operative section.[11] Under it the respective percentages of fault of all concerned are determined, the judgment sets forth the corresponding “equitable share” of each, and the plaintiff is awarded the amount of his total damages, reduced by his and any settling party’s percentages of fault, “against each party liable on the basis of rules of joint-and-several liability.” However, under section 2(d) if any party’s “equitable share” of the judgment is (wholly or partly) “uncollectible from that party,” the court “shall reallocate any uncol-lectible amount among the other parties, in-eluding a claimant at fault, according to their respective percentages of fault” (emphasis added). The reason for this provision is set forth in the official comments to section 2 as follows:
“Reallocation of the equitable share of the obligation of a party takes place when his share is uncollectible.
Reallocation takes place among all parties at fault. This includes a claimant who is contributorily at fault. It avoids the unfairness both of the common law rule of joint-and-several liability, which would cast the total risk of uncollectibility wpon the solvent defendants, and of a rule abolishing joint-and-several liability, which would cast the total risk of uncollec-tibility wpon the claimant.” (Emphasis added).[12]
That is precisely the rationale and effect of the position here espoused. The official comments likewise illustrate the application of the reallocation rule by an example in which the plaintiff, whose total damages are $10,-000, is forty percent negligent and two defendants are each thirty percent negligent. If one defendant is insolvent, the plaintiffs recovery from the other is ultimately $4,286, which is 3/7ths of the $10,000, the exact *1150 result here advocated.[13] This dissent, however, would, in the example given, initially limit each of the defendants’ liability to $4,286. For the reasons stated below, this essentially procedural modification to the UCFA approach is practically fair and analogous to traditional admiralty practice.[14]
The UCFA was judicially adopted by the Supreme Court of Missouri when it eliminated the common law contributory negligence bar. Gustafson v. Benda, 661 S.W.2d 11, 15-16 (Mo.1983) (en banc).[15] Later, this was legislatively ratified, and similar legislation has also been adopted in Arizona, Minnesota, Montana, Connecticut, and New Hampshire. Schwartz, supra, § 3 — 5(c)(5), citing Mo.Rev. Stat. § 537.067(2); Ariz.Rev.Stat. § 12-2508; Minn.Stat. § 604.02(2); Mont.Code Ann. § 27-1-703(3); N.H.Rev.Stat.Ann. § 507:7-e (III).[16]
*1151 Similarly, the Restatement (Second) of Torts § 886A, comment i (1977), states in pertinent part:
“In determining equitable shares of the obligation, it seems wise, particularly in comparative-negligence states, to confine the determination to parties to the action rather than to attempt to calculate the equitable shares for alleged tortfeasors who are not parties and not bound by the decisions. If one tortfeasor’s equitable share turns out to be uncollectible it should be spread proportionately among the other parties at fault.” (Emphasis added).
Essentially the present approach was adopted in Haney Electric Co. v. Hurst, 624 S.W.2d 602 (Tex.CivA.pp.-Dallas 1981, writ dismissed as moot). That case involved a three-car collision. In separate actions, two of the drivers — each later found to be thirty percent negligent — sued the third driver— later found to be forty percent negligent. The eases were consolidated, and one question was whether the defendant (the third driver, found forty percent at fault) should be liable to a particular plaintiff for forty percent of the harm (that is, only the defendant’s share) or seventy percent (that is, the defendant’s share added to the entire thirty percent share of the other plaintiff/tortfea-sor, neither of the plaintiffs being also a defendant). The court adopted neither approach and chose instead to hold the defendant third driver liable to each plaintiff for 40/70ths of total damages. That fraction represented the ratio of the defendant’s negligence (forty percent) to the total of his negligence and the negligence of the party seeking recovery (thirty percent). The court thus placed on the defendant a portion of the unsued tortfeasor’s share of fault, but only that portion represented by the ratio of the defendant’s fault (forty percent) to the combined fault of the defendant and plaintiff (seventy percent). The court considered this result mandated not only by the Texas comparative negligence scheme, Tex.Rev.Civ. Stat. art. 2212a (codified as amended at Tex. Civ.Proc. & Rem.Code § 33.001), but also by “[ejlementary fairness.” 624 S.W.2d at 612.
An analogous approach has been taken under the Louisiana statute, LSA-C.C. art. 2324, in respect to employer fault in an employee’s suit against a third party. Thus, in Prestenbach v. Rains, 4 F.3d 358 (5th Cir.1993), the Louisiana employer, immune by virtue of the worker’s compensation law, was found seventy-five percent at fault, the plaintiff-employee fifteen percent, and the defendant-third party ten percent. The plaintiff appealed the judgment which awarded him only ten percent of his damages against the third party. We applied the “ ‘ratio approach’ ” of Guidry v. Frank Guidry Oil Co., 579 So.2d 947 (La.1991), as carried forward by Gauthier v. O’Brien, 618 So.2d 825, 832-33 (La.1993), and held that plaintiff was entitled to recover forty percent of his damages from the defendant because the defendant’s percentage of negligence (ten percent) was forty percent of the combined negligence (twenty-five percent) of the plaintiff (fifteen percent) and the defendant (ten percent). Prestenbach at 360-61. Similarly, in Davis v. Commercial Union Ins. Co., 892 F.2d 378 (5th Cir.1990), the plaintiff-employee was found sixty percent at fault, his immune Louisiana employer thirty percent, and the defendant third party ten percent. The plaintiff appealed the judgment, which awarded him only ten percent of his damages against the third party. We held that the employer’s fault should be allocated between the plaintiff and the defendant “in proportion to their previously determined degrees of fault,” with the result that plaintiff was to be granted judgment against the defendant for l/7th (14.29%) of his total damages. Id. at 384-385.[17]
A thorough review and analysis of the relevant decisions, legislation, and scholarly *1152 writing is contained in the American Law Institute’s Restatement of the Law (Third) Torts: Apportionment of Liability, Preliminary Draft No. 1 (May 31, 1995) (Reporter, Professor William C. Powers, Jr., University of Texas School of Law; Associate Reporter, Professor Michael D. Green, University of Iowa College of Law) (hereafter “Apportionment of Liability”). The recommendations made there include provisions in substance the same as those of the UCFA.[18] The reporters’ notes to section 25A (see note 18, supra) explain the rationale for these recommendations as follows:
“The critical question is who should bear the risk of insolvent parties. The advent of comparative fault, at least when some fault is attributed to the plaintiff, removes the traditional justification for imposing that risk on defendants. See Pearson, Apportionment of Losses Under Comparative Fault Laws — An Analysis of the Alternatives, 40 La. L.Rev. 343, 362 (1980) (“When the plaintiff himself has been negligent, the logical support for joint and several liability evaporates.’). Nevertheless, even with the plaintiff sharing some fault, each defendant is still the legal cause of all of plaintiffs damages. Shifting the entire risk of insolvency to plaintiff ‘merely transform[s] the inequity of imposing that risk entirely on solvent defendants into the equal and opposite inequity of imposing *1153 the risk entirely on the plaintiff.’ II AMERICAN Law Institute REPORTERS’ Study, Enterprise Liability for Personal INJURY 147 (1991); see also Wade, Should Joint and Several Liability of Multiple Tortfeasors be Abolished?, 10 AmJ.Trial Adv. 193, 197 (1986).
Professor Charles 0. Gregory made this point quite eloquently many years ago:
... [W]hen the plaintiff and the solvent tortfeasor are both negligent, they share the stigma which at common law seems to have furnished the justification for the somewhat arbitrary allocation of this risk on joint judgment debtors_ [Distribution of the risk of insolvency of one of the joint defendants in accordance with the apportionment of fault would seem to be the only method of administration consistent with the terms of the comparative negligence statute.
Gregory, Legislative Loss Distribution in Negligenoe Actions 142 (1936).
Numerous commentators have advocated reallocating the share of an insolvent or immune party to the remaining responsible parties in proportion to their responsibility for plaintiff’s injuries. See ... Wade, Should Joint and Several Liability of Multiple Tortfeasors be Abolished?, 10 AmJ.Trial Adv. 193, 198 (1986); Uniform Comparative Fault Act § 2(d) (1977); II American Law Institute Reporters’ Study, Enterprise Liability for Personal Injury 127-57 (1991) (advocating reallocation of insolvent party’s share when defendants are independent tortfeasors without a prior relationship); Zavos, Comparative Fault and the Insolvent Defendant: A Critique and Amplification of American Motorcycle Ass’n v. Superior Court, 14 Loy.L.A.L.Rev. 775 (1980-81); Williams, Joint Torts and Contributory Negli-genoe § 110, at 414-20 (1951); Sobelsohn, Comparing Fault, 60 Ind.L.J. 413, 456 (1985); Miller, Extending the Fairness Principle of Li and American Motorcycle: Adoption of the Uniform Comparative Fault Act, 14 Pao.L.J. 835, 861-63 (1983); Boyette, Note, Reconciling Comparative Negligence, Contribution, and Joint and Several Liability, 34 Wash. & Lee L.Rev. 1159, 1174-76 (1977); see also Steenson, Recent Legislative Responses to the Rule of Joint and Several Liability, 23 Tort & Ins.L J. 482 (1988) (describing the variety of reallocation schemes that exist in a number of states).
The reallocation provision in § 25A also comports with provisions in a number of states that have abolished joint and several liability for independent tortfeasors, except where the plaintiff is attributed no responsibility for the injury.... Of course, this exception reflects the common law rule before the adoption of comparative fault, which made independent tortfeasors jointly and severally liable for a plaintiffs indivisible injury. Section 25A results in the same outcome in those instances in which the plaintiff is found free of responsibility.” Id. at 248-251.
In sum, pure joint and several liability was an incidental and logical application of a regime in which the plaintiffs causative fault, no matter how slight in comparison to that of a defendant, barred any recovery whatever. Until the late 1960s, that was the almost universal rule in common law jurisdictions. Since then, the vast majority of jurisdictions that have abandoned the common law ban on any recovery for a plaintiff whose negligence is to any extent a cause of the accident in question have likewise abandoned across-the-board pure joint and several liability. Where the plaintiff and a defendant are both guilty of causative fault, and so also is a third actor, there is no justification for allocating, as between that plaintiff and defendant, ultimate responsibility for the fault of the third actor on any basis other than on the ratios which the fault of the plaintiff and the defendant respectively bear to the total fault of them both.
Under the UCFA and Apportionment of Liability, this allocation will frequently— though by no means always — not be made until after judgment. For that reason, it has been subject to the justifiable criticism that it may be somewhat unwieldy, administratively burdensome, and may tend to undermine the *1154 finality of judgments.[19] However, these criticisms are not applicable to the position taken by this opinion, which is that the allocation will always be made in the judgment, and that there is no reason to make any defendant the plaintiffs collection agent for any portion of the damages for which plaintiff bears the ultimate responsibility. We turn now briefly to the mechanics of allocation in the judgment.
Mechanics of Judgment Damages Allocation
Let us revert to our collision involving Exxon’s crew boat, the shrimper, and the small pleasure craft. Exxon sues one or both of the other two vessels for the damages to its crew boat. There is no problem if Exxon is not at fault, for then the fault of any defendant (no matter how many are at fault) will necessarily be one hundred percent of the combined fault of Exxon and that defendant, so that defendant is liable for one hundred percent of Exxon’s damages. Likewise, there is no problem if Exxon is at fault, but of the other two vessels only the shrimper is found at fault, the pleasure craft either being found not at fault or no finding being made as to its fault (as might often be the case if it were not a party). In that situation, all agree that Exxon recovers from the shrimper the same fraction of its total damages as its fault is of the total fault of itself and the shrimper. A problem arises only if Exxon, the shrimper, and the pleasure craft are all three found to be guilty of causative fault. Assume each is assessed one-third of the fault and that Exxon’s total damages are $100,000. The judgment should award Exxon a total recovery of $66,666.67 (%rds of $100,000),[20] with provision that no more than $50,000 ()é % x $100,000) thereof may be collected from the shrimper and no more than $50,000 $100,000) thereof may be collected from the pleasure craft.[21] If the causative fault percentages are changed somewhat, to correspond to those in this case, so that Exxon’s percentage of fault is 20%, the shrimper’s is 20%, and the pleasure craft’s is 60%, then the judgment should award Exxon a total recovery of $80,000 (80% of $100,000), with provision that no more than $50,000 (2%o x $100,000) thereof may be collected from the shrimper and no more than $75,000 (6%o x $100,000) thereof from the pleasure craft.[22] In other words, in such a situation the total judgment is for the amount which equals the same fraction of plaintiffs total damages as the total fault of all except the plaintiff is of the total fault of all including the plaintiff; but the judgment will provide that the plaintiff may not recover more of said sum from any particular defendant than the amount which equals the same fraction of plaintiffs total damages as that particular defendant’s fault is of the total fault of both plaintiff and that particular defendant. For example, if plaintiff suffers total damages of $100,000 and is 10% at fault, defendant A is 40%, defendant B is 30%, and *1155 defendant C is 20% at fault, then plaintiffs total judgment is for $90,000, but provides that no more than $80,000 (4%o X $100,000) thereof may be collected from defendant A, no more than $75,000 (3%o x $100,000) thereof may be collected from defendant B, and no more than $66,666.67 (2%o x $100,000) thereof may be collected from defendant C.[23]
This simple system will work in all cases and serve to authorize appropriate recovery, while at the same time limiting any particular defendant’s ultimate potential liability to an amount no greater than the fraction of plaintiffs damages which is that defendant’s percentage of fault divided by the total of the percentages of fault of the plaintiff and that defendant.
If it is desired that the expression of this result in the judgment be in terms of some several liability and some joint and several liability, then that, too, can be accomplished, although in some cases an algebraic formula must be employed. A case such as this, with only the plaintiff and two defendants at fault, will be by far the most frequent instance in which any allocation question arises, and in such an instance a fairly simple set of steps may also be utilized to arrive at the appropriate several and joint and several liability figures to be set forth in the judgment. Assume plaintiffs total damages are $100,000, and, as here, causative fault is distributed 20% to the plaintiff, 60% to defendant A, and 20% to defendant B. First plaintiffs maximum recovery is calculated at $80,000 (80% of $100,000); then the maximum liability of defendant A is calculated at $75,000 (% x $100,000) and the maximum liability of defendant B is calculated at $50,000 (¿% x $100,-000), all as above explained. Next, the amount of A’s maximum liability ($75,000) is subtracted from plaintiffs maximum recovery ($80,000), the result being $5,000 ($80,000 — $75,000 = $5,000), which is the several liability of B. Next, the amount of B’s maximum liability ($50,000) is likewise subtracted from plaintiffs maximum recovery ($80,000), the result being $30,000 ($80,000 - $50,000 = $30,000), which is the several liability of A. Then, the several liability of B ($5,000) and the several liability of A ($30,000) are added together, and the total of $35,000 ($30,000 + $5,000 = $35,000) is subtracted from plaintiffs maximum recovery ($80,000), the result being $45,000, which is the joint and several liability of A and B. Cast in this form, plaintiff would have judgment against A alone for $30,000, and also against B alone for $5,000, and further against A and B jointly and severally for an additional $45,-000. These figures total $80,000 ($45,000 + $30,000 + $5,000 = $80,000). B’s exposure is limited to $50,000 ($45,000 + $5,000 = $50,000); and A’s exposure is limited to $75,-000 ($45,000 + $30,000 = $75,000). Contribution would also be provided for as between B and C (see note 22, supra).
In certain circumstances where three or more defendants and the plaintiff are each found guilty of causative fault — surely an extremely rare occurrence — an algebraic formula must be employed to arrive at the appropriate amounts of the several liability of each defendant and of the joint liability. Appropriate formulas are set out in the appendix to this dissent. It is important to recall, however, that it will alivays suffice to simply provide in the judgment a maximum amount which may be collected from each particular defendant, which is easily arrived at merely by multiplying the plaintiffs total damages by the fraction whose numerator is that particular defendant’s percentage of the total fault of all parties and whose denominator is the total of that particular defendant’s and the plaintiffs respective percentages of the totál fault of all parties. As previously noted, a judgment in that form, with appro *1156 priate provisions for contribution (see notes 22 and 23, supra) will be wholly adequate.[24]
General Maritime Law
The majority concludes that it has always been a clearly established rule of United States general maritime law that in our hypothetical collision involving the three vessels, if all three were equally at fault the crew boat could recover two-thirds of its damages from the shrimper even though the shrimper was no more at fault than the crew boat. Not surprisingly, however, the majority cites no Supreme Court opinion so holding or stating, and only some general language in a few scattered lower court decisions, the earliest being in 1968, which do not directly address the question.
First, some background.
In The Catharine, 58 U.S. [17 How.] 170, 15 L.Ed. 233 (1854), two vessels collided, each being at fault. The Supreme Court held that the total loss should be divided equally, thus allowing a party to recover despite its own negligence, albeit only half of its loss. The Court stated:
“... [I]t becomes necessary to settle the rule of damages in a case where both vessels are in fault.
The question, we believe, has never until now come distinctly before this court for decision. The rule that prevails in the *1157 District and Circuit Courts, we understand, has been to divide the loss....
This seems to be the well-settled rule in the English admiralty....
Under the circumstances usually attending these disasters, we think the rule de-viding [sic] the loss the most just and equitable, and as best tending to induce care and vigilance on both sides in the navigation.” Id., 58 U.S. at 177-178.
Thereafter, in The Washington, 76 U.S. [9 Wall] 513, 19 L.Ed. 787 (1869), a passenger on a ferry, who sustained serious personal injury when the ferry and the steamboat Washington collided, libeled both vessels, each of which was found at fault. The libel-ant-passenger, of course, was not at fault. The Supreme Court stated:
“Both vessels being in fault, both were liable to the libelant, and both could be proceeded against in the same libel. The damages were properly apportioned equally between the two vessels, the right being reserved to the libelant to collect the entire amount of either of them in ease of the inability of the other to respond for her portion.” Id., 76 U.S. at 516.
The same result obtained in The Alabama, 92 U.S. 695, 23 L.Ed. 763 (1876), where the bark Ninfa, in tow of the tug Game-Cock, collided with the Alabama. The Ninfa libeled both The Game-Cock and The Alabama. “[B]oth The Alabama and The GameCock were in fault, and ... The Ninfa, which was in tow of The Game-Cock, and suffered the loss, was not in fault.” 92 U.S. at 695-96. “The district court rendered a decree against both [The Alabama and The Game-Cock] for the whole [of The Ninfa’s loss], regarding them as liable in solido. The circuit court, on appeal reversed this decree, and divided the loss between them, rendering a decree against each for one half the amount.” Id. at 696. The Ninfa appealed to the Supreme Court, which held:
“Conceding, therefore, that a vessel in tow, and without fault, is to be regarded as sustaining the same relation to the collision which is sustained by cargo (and it seems fair thus to consider it), we think that the decree of the circuit court was erroneous, and that a decree ought to be made against The Alabama and The Game-Cock, and the respective stipulators, severally, each for one moiety of the entire damage, interest, and costs, so far as the stipulated value of said vessel shall extend; and any balance of such moiety, over and above such stipulated value of either vessel, or which the libelant shall be unable to collect or enforce, shall be paid by the other vessel or her stipulators to the extent of the stipulated value thereof, beyond the moiety due from said vessel.
This is substantially the form of decree sanctioned by this court in The Washington and The Gregory, 9 Wall. [513] 516, 19 L. ed. [787] 788, a case involving similar principles, although the particular point was not fully discussed in that case.” Id. at 697-98 (emphasis added).
Next came The Atlas, 93 U.S. 302, 23 L.Ed. 863 (1876), so heavily relied on, and evidently misunderstood, by the majority. There, a canal boat laden with cargo was under tow by The Kate when the canal boat and The Atlas collided, and as a result the canal boat sank and its cargo was lost. The subrogated insurers of the cargo libeled The Atlas alone, and it was the only vessel before the court, as The Kate was not brought in. Id. 93 U.S. at 308-309. The district court found that the cargo loss was “caused by the mutual fault of the steam-tug Kate and the steamboat Atlas, and that the libelants do recover against the steamboat Atlas one half of the damages by them sustained....” Id. at 309. The libelants appealed, and the Supreme Court held that, as The Kate was not a party to the suit and The Atlas had not attempted to bring it in, the libelants, innocent of any wrongdoing, were entitled to recover their full damages against The Atlas, not simply one half. The Court cites The Washington with full approval and states that “[m]ueh care was taken in framing the decree in that case.” The Atlas 93 U.S. at 318. The Court explains its holding as follows:
“Contributory negligence on the part of the libelant cannot defeat a recovery in collision eases.... Proof of the kind will defeat a recovery at common law; but the rule in the admiralty is, that the loss in *1158 such a case must be apportioned between the offending vessels, as having been occasioned by the fault of both; but the rule of the common law and of the admiralty is the same where the suit is promoted by an innocent party, except that the moiety rule may he applied in the admiralty, if all the parties are before the court, and each of the wrong-doers is liable to respond for his share of the damage. Subject to that qualification, the remedy of the innocent party is substantially the same in the admiralty as in an action at law, the rule being, that in both he is entitled to an entire compensation from the wrong-doer for the injury suffered by the collision....
Goods shipped as cargo, and their owners, as in the case before the court, are innocent of all wrong; and the owners of the cargo may sue the owners of one of the ships, or both, and they may sue at law or go into the admiralty, at their election, and having proved their case, they are as much entitled to full compensation in the admiralty as they would have been if they had elected to pursue their common law remedy, saved to them by the proviso contained in the 9th section of the Judiciary Act. 1 Stat. at L., 77.
Co-wrong-doers, not parties to the suit, cannot be decreed to pay any portion of the damage adjudged to the libelant, nor is it a question in this case whether the party served may have process to compel the other wrong-doers to appear and respond to the alleged wrongful act.
Parties without fault, such as shippers and consignees, bear no part of the loss in collision suits, and are entitled to full compensation for the damage which they suffer from the wrong-doers, and they may pursue their remedy in personam, either at common law or in the admiralty, against the wrong-doers or any one or more of them, whether they elect to proceed at law or in the admiralty courts.” Id. at 316-319 (emphasis added).
Plainly, The Atlas intended no departure from the moiety rule of The Washington and The Alabama, but did not apply it solely because the other vessel at fault, The Kate, was not before the Court, and no one had tried to bring her in. Just as plainly, the majority errs in suggesting that The Atlas’ numerous references to plaintiffs who are “without fault” or “innocent of all wrong” are explainable as having been made fourteen years before the bar of contributory negligence was lifted by The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586 (1890). However, at least since the 1855 decision in The Catharine, contributory negligence had been no bar. Moreover, The Atlas was a collision case, its remarks were directed to such cases, and it openly recognized that “[cjontributory negligence on the part of the libelant cannot defeat a recovery in collision cases” although “[pjroof of the kind will defeat a recovery at common law; but the rule in the admiralty is, that the loss in such a case must be apportioned between the offending vessels.” Id. 93 U.S. at 316-317. The majority has clearly misread The Atlas.
The Juniata, 93 U.S. 337, 23 L.Ed. 930 (1876), follows the same principles as The Atlas.[25]
*1159 However, where both vessels at fault are before the court, the proper decree in favor of an innocent third party (such as a passenger, a tow, or cargo) continued to be the “moiety” rule, granting judgment for half the innocent party’s damages against each of the two offending vessels, with provision that if the libelant should be unable to collect from one vessel its moiety, the other vessel would then be responsible for the deficiency. In such a case, it was reversible error to enter a judgment for the innocent plaintiffs damages against both vessels at fault jointly. See, e.g., The Sterling, 106 U.S. 647, 1 S.Ct. 89, 27 L.Ed. 98 (1882), where the Court stated:
“This was a suit in admiralty against the ship Sterling and tow-boat Equator, for damages sustained by the bark Sif in a collision. Both the ship and tow-boat were found to be in fault, and they were condemned in solido for the whole amount of the loss. From a decree to that effect this appeal was taken.
It is conceded that upon the facts found the owners of the Sif are entitled to a decree against the ship and the tow-boat, as both were in fault. The well-established rule in such cases is to apportion the damages equally between the two offending-vessels, the right being reserved to the libelant to collect the entire amount from either of them in case of the inability of the other to respond for her portion_[cita-tions] As in this case the decree was against both vessels for the full amount of the loss, it should be modified so as to be against the Sterling and the Equator, and their respective stipulators, severally, each for one-half of the entire damage and costs; any balance of such half which the libelant shall not be able to enforce against either vessel to be paid by the other vessel or her stipulators.” Id. 106 U.S. at 647-48, 1 S.Ct. at 89-90.[26]
And this rule continued to be enforced. Thus in Crain Brothers, Inc. v. Weiman and Ward Company, 223 F.2d 266 (3d Cir.1955), a suit by innocent cargo against the barge charterer, Union, and barge owner, Crain, who were both at fault, the Court stated:
“We disagree, however, with the manner in which damages were awarded. Judgment was entered against both Union and Crane in the full amount. In admiralty, we have the rule of divided damages.... Where two parties are jointly responsible for injury to a third, each is primarily liable for only one-half the damages, the charterer and owner of the barge should each be assessed with one-half the cargo loss with a provision that if the libellant cannot collect any part from one, that amount should be assessed against the other in addition to the one-half for which it is primarily liable.” Id. at 258.
See also Gilmore & Black, Admiralty (2d ed. 1975) at 528 (‘Where a third party is damaged, and sues two ships that are at fault, he is not prejudiced by the half-damages rule, *1160 but may collect his Ml damages from one if the other is unable to respond in damages, or may collect any deficiency if one cannot pay its Ml half’ [footnote omitted] ).[27]
The Max Morris was a personal injury suit by a longshoreman against the vessel he was loading, and both parties having been found at fault the question certified to the Supreme Court was whether “the libelant ... is entitled to a decree for divided damages,” which the Supreme Court “answered in the affirmative.” Id. 137 U.S. at 8-11, 15, 11 S.Ct. at 31, 33. The Court noted that under The Cath-arine fault did not bar all recovery in collision cases, and, after discussing, among other decisions, The Washington, The Alabama, The Juniata, and Atlee v. Packet Co., 21 Wall. 389, 22 L.Ed. 619 (1875) (where a vessel struck a pier), observed that “this court has extended the rule of the division of damages to claims other than those for damages to the vessels which were in fault in a collision.” Id. 137 U.S. at 11, 11 S.Ct. at 32. The court then reviewed several lower court decisions concerning damage to cargo or tows, caused by mutual fault but not involving any collision, where the divided damages rule was applied to allow some recovery de *1161 spite the plaintiff’s fault.[28] The Court concluded that these cases had properly held that the libelant’s fault should only diminish recovery, not completely bar it, and that such a rule was appropriate “as in harmony with the rule for the division of damages in cases of collision.” Id. 137 U.S. at 15, 11 S.Ct. at 33. Accordingly, it held that the libelant “is entitled to a decree for divided damages.” Id.[29]
There are basically two things that one can say about all these cases. First, none of them involved a situation in which the instant question could have ever been presented; that is, none involved a negligent plaintiff and at least two negligent other parties or actors. Second, the general maritime law did not slavishly follow the common law. Nor was the only difference that admiralty allowed the negligent plaintiff some (albeit diminished) recovery, for the innocent plaintiff’s rights were also somewhat different, as Judge Addison Brown explained in The Hudson, 15 F. 162, 164 (S.D.N.Y.1883):
“And where the innocent owner of the cargo, or of a tow in charge of one vessel, sues and recovers against both vessels, the libelant cannot recover a judgment in soli-do against both for his whole damage, with a right to levy his execution in full against either alone, as at common law, but only a judgment for a moiety of the damages against each vessel, with an alternative right of recourse against either for so much of the moiety adjudged to be paid by the other as he is unable to collect from the latter.” (Emphasis added).
Of course, United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), abandoned the rule that loss was always to be divided equally — or per vessel — among vessels at fault, and held that instead the allocation was to be based on the actual comparative fault of each.[30] However, there is nothing to indicate that the divided damages rule or its operation was changed otherwise than by replacing automatic equal per vessel at fault allocation with allocation by actual comparative degree of fault. The allocation was merely made more precise, so as to be fairer.[31]
Suppose in The Juniata (see note 25, supra ) the libelant United States had also been at fault equally with The Juniata. Would it have recovered two-thirds of its loss from The Juniata because the proof showed that The Neafie also was guilty of equal fault, even though the United States libeled only The Juniata (and The Neafie was not *1162 brought in)? No authority suggests such a perverse result. Suppose that the United States libeled both The Juniata and The Nea-fie, and all three were found equally at fault. The United States would then presumably have recovery for one-third of its damages against The Juniata and The Neafie each, but what would the United States’ alternative right of recovery be if, for example, the full third could not be collected from The Neafie? Could the United States then collect all of that shortfall from The Juniata, or only half of it? The only decision we have found addressing this question is Petition of Kinsman Transit Company, 338 F.2d 708 (2d Cir.1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965), decided by a distinguished panel of the Second Circuit. There three parties, the City of Buffalo, Continental Grain Company, and Kinsman Transit Company, were each at fault and each suffered damages. Kinsman, however, was held entitled to limit its liability under the Limitations of Vessel Owner’s Liability Act, 46 U.S.C. §§ 181-188. Judge Friendly, writing for himself and Judges Waterman and Moore,[32] held as follows:
“A separate problem is how to deal, among the negligent parties, with that part of Kinsman’s responsibility of which its limitation frees it. We think the fair solution is to divide that deficiency equally between Buffalo and Continental, rather than to hold Continental liable to Buffalo for the entire unsatisfied portion of Kinsman’s share and vice versa....
The decree is modified so that the City of Buffalo may recover two-thirds of the damages to its property from Continental and Kinsman subject to limitation by the latter but with Continental bearing only half of Kinsman’s deficiency, that Continental may recover two-thirds of the damages to its property from the City and Kinsman subject to limitation by the latter but with the City bearing only half of Kinsman’s deficiency, and that Kinsman, which made no claim against Continental, may recover half of the damages suffered by [Kinsman’s vessel] the Shiras at the bridge from the City of Buffalo, which may then obtain contribution of half that amount from Continental.” Id. at 726.
Kinsman — which is squarely contrary to the majority’s approach — is directly on point and should control. We are aware of no contrary authority.
The few decisions cited by the majority are not persuasive of a contrary result. The only relevant issue in Empire Seafoods, Inc. v. Anderson, 398 F.2d 204 (5th Cir.), cert. denied, 393 U.S. 983, 89 S.Ct. 449, 21 L.Ed.2d 444 (1968), was whether Anderson and Gates, two employees of Cleary, a contractor working on a bridge, should have been awarded recovery directly against Cleary, as well as against Empire, whose vessel struck the bridge and who was awarded recovery over against Cleary for half of what the judgment required it to pay Anderson and Gates. All parties were at fault. There was no issue on appeal as to how much Anderson and Gates should recover from either Cleary or Empire, but only whether their recovery could be directly against Cleary at all or, if not, whether whatever they were awarded against Empire could be included as Empire’s damages in Empire’s action against Cleary. In our initial opinion, we held Anderson and Gates could recover directly from Cleary, as well as Empire, and supported this by quoting with approval the following passage from Benedict on Admiralty § 416 (6th ed. 1940), viz:
“ ‘The decree, therefore, should provide that each vessel ... pay one-half of the entire damages, interest and costs, ... and it should further provide that any part of the one-half damages assessed against either vessel, which libelant may not be able to collect from that vessel, be assessed against the other vessel, in addition to the one-half which she is in the first instance compelled to pay.’” Empire at 217.
Recognizing that this text was addressing liability for the damages of an innocent third party[33] — as is obvious from the reference to *1163 the two vessels at fault each being primarily liable for “one-half of the entire damages”— our original opinion appended a footnote at the end of the above quotation, as follows:
“2i. rpjjg authorities state the rule in terms of ‘innocent third parties.’ While it might be argued that these authorities can have no application to the instant situation since Anderson and Gates were negligent, we are convinced that the reduction of their respective recoveries under the comparative negligence doctrine is to be considered full penalty for their fault and that they must, thereafter, be treated in the same manner as ‘innocent third parties.’ ” Empire at 217 n. 21.
But, this footnote does not address — and there was no issue before our Empire panel concerning — whether the plaintiff, whose negligence is equal to that of each of the two defendants so that each defendant is initially liable for a third of damages, if unable to recover his third from one of the defendants may then recover it all from the other, or may recover only half of the deficiency, as in Kinsman. Moreover, on rehearing in Empire we withdrew our holding that Anderson and Gates could recover directly from Cleary — the holding made in that portion of the opinion to which footnote 21 was appended — and stated: “Upon reconsideration, we are convinced that what we said about the District Court decree in our original opinion was apropos only to those instances where, aside from a statutory prohibition, an innocent third party is injured by the mutual fault of vessels in a collision.” Empire at 217.
The majority also relies on Gele v. Chevron Oil Co., 574 F.2d 243 (5th Cir.1978), involving a collision between a pleasure craft and a Chevron structure in the Gulf of Mexico in which Gele, a guest on the pleasure craft, was injured. The district court held Chevron solely at fault. On appeal, both Gele and Chevron contended that the pleasure craft, operated by Herr, was also at fault, and we agreed. We remanded to determine whether or not Gele also played such a role in the pleasure craft’s operation so as to be chargeable with its fault, and the degrees of comparative fault as between the pleasure craft and Chevron. We next held that neither Chevron nor Herr were liable to the other in indemnity. Immediately following this latter holding appears the following passage relied on by the majority here, viz:
“This decision, of course, does not affect Gele’s right to collect all his damages from one party in the event he is unable to obtain the relative portion of damages from each party at fault. Empire Seafoods, Inc. v. Anderson, 5 Cir., 1968, 398 F.2d 204, 217, 1968 A.M.C. 2664, cert. denied, 393 U.S. 983, 89 S.Ct. 449, 21 L.Ed.2d 444.” Gele at 251 (emphasis added).
This passage appears to address only a situation in which Gele was not chargeable with any fault, as else he would not be entitled to “collect all his damages” from anyone (and reference to his collection “from each party at fault” would likewise be inappropriate).[34] In any event, there is nothing to indicate that there was any issue before the Gele court concerning how much Gele, if negligent, could recover from Chevron or *1164 Herr in the event that collection could not be affected from one of them. As to the issue now before us, the quoted Gele language is no more than a passing and inapposite remark.
The majority’s reliance on Drake Towing Co., Inc. v. Meisner Marine Const. Co., 765 F.2d 1060 (11th Cir.1985), is plainly misplaced. In that case, Drake’s vessel was damaged when it struck a piece of concrete left in the channel by Meisner. Drake sued Meisner and the United States, the latter for its misplacement of a marking buoy. However, Drake settled with Meisner prior to trial. On trial, fault was allocated twenty percent to Drake, twenty percent to the United States and sixty percent to Meisner, and the district court awarded Drake judgment against the United States for twenty percent of Drake’s total damages. Drake appealed, contending “that the district court erred in decreasing its recovery against the United States by the percentage of liability attributed to Meisner, a nonparty to the trial of the case.”[35] The Eleventh Circuit agreed. Its holding, however, is plainly contrary to McDermott, Inc. v. AmClyde, — U.S. -, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). Just as the majority does here, the Drake Towing panel relied on, and misread, Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). See Drake Towing, 765 F.2d at 1067. All that aside, however, the majority here clearly misreads Drake Towing itself and wholly ignores its actual holding. The majority relies on the opinion’s statement that “Drake may recover its entire damages, less that portion attributable to its own fault, from the United States.” Id. The majority apparently believes that this means that the United States was charged with all Meisner’s fault and thus Drake was held entitled to recover eighty percent of its damages from the United States. But, if that were so, then the Eleventh Circuit would simply have reformed the judgment (or ordered the district court to do so) to so reflect (there being no issue as to the amount of Drake’s total damages). However, that is not what the Eleventh Circuit did. Rather, it held that “[t]he issue of Meisner’s liability is irrelevant to the determination of that of the United States,” id. (emphasis added), and the court “therefore remand[ed] the case to the district court to reallocate liability between Drake and the United States without considering the negligence of Meisner.” Id. at 1068 (emphasis added).[36] In other words, Drake Towing held that the relevant comparison was not, as the majority here would have it, that between the negligence of Drake, on the one hand, and the combined negligence of Meis-ner and the United States, on the other hand, but rather was simply that between the negligence of Drake and the negligence of the United States, without considering whether or to what extent Meisner was negligent. Drake Towing does not support the majority here; rather, it rejects the very position which the majority contends for.
These are essentially the general maritime law cases cited by the majority. They simply do not sustain its assertion of a well-established general maritime law rule allowing a plaintiff, in an accident or collision caused by his fault and that of two others acting independently of each other, with each of the three equally guilty, to hold either one of the other two liable for more than half his damages. The decision that comes closest to really addressing this issue is Kinsman, and it plainly supports the approach advocated in this dissent. It is not contended that that approach is well established either. The point simply is that the issue is essentially open. We should choose the fairest and most logical approach.
LHWCA Cases
The majority also relies on eases involving injuries covered by the LHWCA, principally Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), and Ed-monds. These cases are plainly inapposite, *1165 as the subject matter of the instant case is not within the scope of the LHWCA, which does not reach injuries or activities within the territorial waters of foreign nations.
Examination of these decisions likewise reveals not only that they were driven by their LHWCA setting, as is made plain by McDer-mott, but also that they did not purport to address or consider the issue here presented.
In Pope & Talbot, Hawn, a ship repairman employed by Haenn, was injured while on board Pope & Talbot’s vessel. Hawn began receiving LHWCA compensation payments from Haenn and then sued Pope & Talbot for negligence, agreeing with Haenn to refund to it the LHWCA payments it had made out of any sums Hawn recovered from Pope & Talbot. Pope & Talbot brought in Haenn, seeking contribution or indemnity from it. A jury found Pope & Talbot, Haenn, and Hawn each negligent; seventeen-and-a-half percent negligence was assigned to Hawn, but no percentage was assigned to either Haenn or to Pope & Talbot, and it does not appear that any complaint was ever made of this manner of submission. The district court rendered judgment for Hawn against Pope & Talbot for 87 /¿% of his total damages and awarded Pope & Talbot contribution against Haenn in the amount of half of Pope & Talbot’s liability to Hawn (but not more than Haenn’s maximum potential LHWCA liability to Hawn). Hawn v. Pope & Talbot, 99 F.Supp. 226 (E.D.Pa.1951).[37] On appeal, the Third Circuit affirmed the award against Pope & Talbot, but reversed the award against Haenn, holding that contribution was not available. Hawn v. Pope & Talbot, 198 F.2d 800 (3d Cir.1952). The Supreme Court granted Pope & Talbot’s application for cer-tiorari, but affirmed the Third Circuit. It held that under Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), contribution against Haenn was barred. Pope & Talbot, 346 U.S. at 407-409, 74 S.Ct. at 204.[38] *1166 It likewise rejected Pope & Talbot’s alternative contention that because Hawn had agreed to refund his LHWCA payments to Haenn out of his recovery from Pope & Talbot, therefore “the judgment against it [Pope & Talbot] should be reduced by this amount.” Id. 346 U.S. at 411, 74 S.Ct. at 206. The Court rejected this contention as being inconsistent with section 33 of the LHWCA and as in effect allowing contribution from the employer contrary to Halcyon.[39] The Court likewise rejected Pope & Talbot’s contention that “contributory negligence should have been accepted as a complete bar to Hawn’s recovery,” stating:
“The harsh rule of the common law under which contributory negligence wholly barred an injured person from recovery is completely incompatible with modern admiralty policy and practice. Exercising its traditional discretion, admiralty has developed and now follows its own fairer and more flexible rule which allows such consideration of contributory negligence in mitigation of damages as justice requires. Petitioner presents no persuasive arguments that admiralty should now adopt a discredited doctrine which automatically destroys all claims of injured persons who have contributed to their injuries in any degree, however slight. Pope & Talbot, 346 U.S. at 408-409, 74 S.Ct. at 204-205 (emphasis added; footnote omitted).[40]
That is just what this dissent asks for, a “fairer and more flexible” rule allowing “consideration of contributory negligence in mitigation of damages as justice requires.”
Other than Pope & Talbot’s “ingenious argument” that Hawn’s recovery from it should be reduced by what he received under the LHWCA, which the Court rejected as contrary to LHWCA section 33 (see note 39, supra), Pope & Talbot’s position vis-a-vis Hawn was simply an all or nothing one— Hawn should not recover at all from it, not that his recovery was not properly calculated. The point here in issue was simply not before the Court in Pope & Talbot, nor did the Court there in any way address it.[41] Pope & Talbot was an LHWCA-driven case, and simply does not speak to the present question.
We turn now to Edmonds, the majority’s lead case. There, Edmonds, a longshoreman, was injured in 1974 on a vessel in the course of his employment. He received LHWCA compensation from his employer, the stevedore, and brought suit against the vessel’s owner for negligence. The jury found Edmonds suffered a total of $100,000 damages, that he was 10% at fault, that the vessel was 20% at fault, and that the stevedore, which was not a party to the suit, was 70% at fault. The district court granted judgment for Edmonds against the vessel owner for $90,000. The Court of Appeals held that Edmonds could recover no more than $20,000 from the vessel owner, its percentage of the total fault of all three actors times the total damages. Edmonds v. Compagnie Generale Transatlantique, 577 F.2d 1153 (4th Cir.1978). The Supreme Court reversed, holding that Edmonds was entitled to recover $90,000 from the vessel owner. Edmonds v. Compagnie Generale Transat *1167 lantique, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979).
Two things may be said about Edmonds. First, it was driven by the LHWCA. Ed-monds extensively reviews how the pure several liability approach of the Court of Appeals would affect the stevedore’s and longshoreman’s rights under the LHWCA and particularly the 1972 amendments thereto. Id. 443 U.S. at 269-273, 99 S.Ct. at 2761-62. The Court concludes by observing “we are mindful that here we deal with an interface of statutory and judge-made law,” id. at 270-273, 99 S.Ct. at 2762, and expressing reluctance to “knock out of kilter” the “delicate balance” struck by Congress between the rights of longshoremen, stevedores, and shipowners in the 1972 amendments to the LHWCA. Id. at 273-275, 99 S.Ct. at 2763. Any doubt on this score is surely removed by McDermott where the Court states that “Ed-monds was primarily a statutory construction case and related to special interpretive questions posed by the 1972 amendments to the Longshoremen’s and Harbor Workers’ Compensation Act.” McDermott, — U.S. at -, 114 S.Ct. at 1471. This was not idle dicta, for in McDermott a principle argument of respondents was that “the proportionate share rule,” which McDermott ultimately approved, “is inconsistent with Edmonds.” McDermott, — U.S. at-, 114 S.Ct. at 1471. Moreover, several courts, including the Eleventh Circuit in Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540, 1548 (11th Cir.1987) (“bound by the Supreme Court’s guidance and the rule in Edmonds ”), and this Court in Hernandez v. M/V Rajaan, 841 F.2d 582, 591 (5th Cir.), cert. denied, 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988) (following reasoning of Self), previously had rejected the proportionate fault settlement credit rule adopted in McDermott on the theory that it was inconsistent with Ed-monds. We should indeed be wary of again reading Edmonds too broadly. Finally, we cannot ignore McDermott’s express and apparently approving reference to section 2 of the UCFA (quoted in note 11, supra), particularly to that section’s provision for “reallocation of insolvent defendant’s equitable share.” McDermott at-n. 32, 114 S.Ct. at 1471 n. 32 (see also id. n. 31). Seemingly, McDermott considers such an approach at least an unforeclosed option in the non-LHWCA context.
Second, all the parties and courts involved in Edmonds considered only two alternatives, namely whether to apply pure several liability, with the vessel being liable only for its 20% share and bearing no part of the stevedore’s 70%, or whether, on the other hand, to apply joint and several liability, as would be the ease if the plaintiff had not been negligent, so that the vessel would be liable for 90% and would bear all of the stevedore’s fault. No consideration was given to, and there was even no recognition of, the possibility that the stevedore’s fault should simply be ignored or, what is essentially the same thing, that the stevedore’s fault should be allocated between the longshoreman and the vessel in the same ratio that the negligence of each bore to that of the other. Apart from its concern with the LHWCA, the thrust of Edmonds amounts to a questioning of the proposition that a third party’s fault should reduce the liability which the defendant would otherwise have. Ed-monds cites no authority or general principles addressing how the negligence of a plaintiff is to be compared where there are two or more other independent actors also guilty of causative fault.[42] Edmonds’ approach in this respect is well illustrated by its posing of the question: “ ‘one is still left to wonder why the longshoreman injured by the negligence of a third party should recover less when his employer has also been negligent than when the employer has been without fault.’ ” Id. 443 U.S. at 269, n. 24, 99 *1168 S.Ct. at 2761 n. 24 (emphasis added) (quoting Zapico v. Bucyrus-Erie Co., 579 F.2d 714, 725 (2d Cir.1978)). There is no satisfactory-answer to that question. This case poses the flip side of the same question, namely why should negligent A, injured in a three-person accident also involving B, likewise negligent, and C, recover more from B if C is negligent than if C is without fault. There is similarly no satisfactory answer to this question. The reason in each instance is that the independent third party’s fault is irrelevant to what the plaintiff should ultimately recover from the other party, just as Drake Towing held.
Certainly, the result in Edmonds is binding on us in suits on LHWCA-covered injuries. But outside of that class of case, Ed-monds is not a proper basis on which to evaluate an approach it (and the parties before it) wholly failed to address or consider. See United States v. Mitchell, 271 U.S. 9, 11-15, 46 S.Ct. 418, 419-20, 70 L.Ed. 799 (1926).[43] As previously observed (see note 38, supra), the Court in Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), refused to extend the Halcyon ban on contribution beyond its context of a contribution claim against the LHWCA employer of the injured plaintiff, and McDermott recognized that Ed-monds was LHWCA-driven and refused to extract from it a general principle to govern the effect of settlement in general maritime law multiple party cases. In this general maritime law case, we, too, should not expand Edmonds beyond its LHWCA context to speak to something it never addressed even in that special context.
FELA, Jones Act, and Miles v. Apex Marine
The majority argues that the Jones Act incorporates the FELA, that the result it reaches would be reached under the FELA and hence under the Jones Act, and that therefore under Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), should be reached in this general maritime law ease.
There are several answers to this. Most obviously, the subject matter of this case is not governed by the Jones Act. Coats was not a Jones Act seaman, nor was he any sort of employee of Penrod.[44] Miles considered “whether the parent of a seaman who died from injuries on ... [the defendant’s] vessel may recover under general maritime law for loss of society, and whether a claim for the seaman’s lost future earnings survives his death.” Id. 498 U.S. at 21, 111 S.Ct. at 319-20. It answered both questions in the negative, because neither such recovery was available under the Jones Act. Id. at 31-34, 36-37, 111 S.Ct. at 325-26, 328. The Court stated “we restore a uniform rule applicable to all actions for the wrongful death of a seaman,” id. at 33, 111 S.Ct. at 326, and “[bejcause this case involves the death of a seaman, we must look to the Jones Act.” Id. at 36, 111 S.Ct. at 328 (emphasis added). Our recent en banc opinion in Guevara v. Maritime Overseas Corporation, 59 F.3d 1496 (5th Cir.1995), states:
“In order to decide whether (and how) Miles applies to a case, a court must first evaluate the factual setting of the case and determine what statutory remedial measures, if any, apply in that context. If the situation is covered by a statute like the Jones Act or DOHSA, and the statute informs and limits the available damages, the statute directs and delimits the recovery available under the general maritime law as well.” (Emphasis in original).
*1169 Clearly the factual setting of this case is not covered by the Jones Act.[45] Accordingly, the above methodology stated in Guevara would appear not to support application of the Miles uniformity principle here.
But even were the Miles uniformity principle applicable, the majority has not demonstrated any established or consistent body of law sustaining the result in this case under either the FELA or the Jones Act.
Turning first to the FELA, when it was adopted in 1908 none of the states authorized any recovery whatever by a plaintiff whose negligence proximately contributed, in even the slightest degree, to the accident in question. Thus, when the FELA was adopted it could not possibly have inferentially incorporated any common law rule on how the recovery of a negligent plaintiff was to be computed in an instance in which two or more other independent actors, at least one of whom was a defendant, were also guilty of causative fault. The common law simply did not address such a situation. Nor does the wording of the FELA. It provides that “[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... resulting in whole or in part from the negligence ... of such carrier,” 45 U.S.C., § 51, and that “the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.” 45 U.S.C. § 53. The FELA neither creates nor even speaks to any cause of action or suit against anyone other than the employer-railroad.[46] The facial inference from the wording and structure of the statute is that the plaintiffs negligence is to be compared to, and only to, that of the defendant employer-railroad. In Norfolk & Western Railway Company v. Earnest, 229 U.S. 114, 33 S.Ct. 654, 57 L.Ed. 1096 (1913), the Court, speaking of what is now section 53, stated:
“... [T]he statutory direction that the diminution shall be ‘in proportion to the amount of negligence attributable to such employee’ means, and can only mean, that, where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both_” Id. at 122, 33 S.Ct. at 657 (emphasis added).
Nothing in section 53 suggests that the negligence comparison thereby called for involves the consideration of the negligence of anyone other than the plaintiff-employee and the defendant-employer railroad.
The only FELA case which the majority cites as being to the contrary is Gaulden v. Burlington Northern, Inc., 232 Kan. 205, 654 P.2d 383 (1982). There the plaintiff railroad employee, injured in a crossing collision involving a truck driven by James, a third party, sued the employer railroad under the FELA and James under state law, but settled with James prior to trial. The court held that the proportionate fault rule to account for the settlement was applicable, so that the plaintiffs recovery from the railroad would be reduced by the proportion which the total of plaintiffs negligence and that of the settling James bore to the total negligence of all three parties. The court went on in dicta, however, and without citation of any authority, to state that had James not settled then the railroad would be liable to the plaintiff for the same fraction of his total damages as the total of the fault of the railroad and James was of the total fault of all three. Id. 654 P.2d at 392.
*1170 If this dicta in a 1982 Kansas decision is the best the majority can do, it can hardly be said that there is or was any well-established and settled FELA rule in this respect.
As previously observed, the Jones Act, passed in 1920, gave seamen injured in the course of employment an action against their employer to be governed by the FELA.[47] The situation then was essentially the same as in 1908 when the FELA was adopted, namely that in all but three states — as opposed to in all states in 1908 — any causative negligence on the part of the plaintiff, no matter how slight, barred any recovery whatever.[48] Accordingly, what has been said about the FELA is applicable to the Jones Act. When the Jones Act was passed, it could not have impliedly adopted any general or established common law rule or practice for computing the recovery of a negligent plaintiff when two (or more) independently acting defendants — or a defendant and one or more others — were also negligent. That is true because there was no such rule or practice, as the plaintiffs negligence barred any recovery. Nor is there any showing that by 1920 there had grown up under the FELA any such established rule or practice which the Jones Act could be said to have impliedly adopted.[49]
The majority cites four cases under the Jones Act which it claims would support the result here if this were a Jones Act case. All of these cases were decided within the last decade. In three of the cases, the court was not presented with, and did not purport to speak to, a situation involving a negligent plaintiff, so the cited general language concerning joint and several liability of the defendants is plainly consistent with the position of this dissent.[50] These three cases tell us absolutely nothing relevant here.
The fourth and final Jones Act case cited by the majority in this respect, Joia v. Jo-Ja Service Corp., 817 F.2d 908 (1st Cir.1987), merits more detailed consideration. There the plaintiff-seaman, Joia, sued his employer, Niagra, under the Jones Act, and in the same action also sued Jo-Ja, the owner of another vessel contributing to the injury, under the general maritime law. Joia’s total damages were found to be $360,000, and fault was allocated 5% to plaintiff Joia, 30% to his employer Niagra, and 65% to Jo-Ja. Niagra alone appealed. The First Circuit held that Joia was entitled to judgment against Niagra and Jo-Ja, jointly and severally, for $342,000 (95% of $360,000). Several things are significant about Joia. First, the only contentions of the parties in this respect, and all that the First Circuit addressed or considered, was whether the limit of Niagra’s liability should be $108,000, 30% of the total damages, or $342,000, 95% of the total. Id. at 914, 917. The court found pure several liability, in which all of Jo-Ja’s fault is charged to Joia, too harsh considering “the remedial nature of the Jones Act.” Id. at 917. In its rejection of the pure several liability contended for by Niagra, the First Circuit relied on Edmonds, which plainly likewise rejected such an approach (as does this dissent). Joia at 916-917.[51] The Joia panel — like Edmonds — simply never adverted to the possibility that Niagra’s maximum liability should instead be fixed by the ratio of its percentage of fault (30%) to the total of the percentages of fault of Joia (5%) and it (30%) — in other words, on the basis of a comparison of Niagra’s negligence to Joia’s. That would have limited Niagra’s exposure to $308,571.42 (sfe — or %— of $360,000). Further, the Joia panel noted Niagra’s reliance on Leger v. Drilling Well Control, Inc., 592 F.2d 1246 (5th Cir.1979), but instead chose to follow Ebanks v. Great Lakes Dredge & Dock Co., 688 F.2d 716 (11th *1171 Cir.1982), cert. denied, 460 U.S. 1088, 103 S.Ct. 1774, 76 L.Ed.2d 346 (1983), which rejected the proportionate share credit approach of Leger as being inconsistent with Edmonds.[52] Joia at 915-17. We now know from McDermott — which the Joia panel did not have the benefit of — that Leger was right and that Ebanks and its progeny erred in concluding otherwise and in reading Ed-monds overbroadly. Finally, it is significant that Joia treats the issue before it essentially as res nova. Joia does not purport to find any settled or recognized body of Jones Act (or FELA) law, or general maritime law, addressing how a given defendant’s maximum exposure is to be fixed in a multi-party ease involving a negligent plaintiff and two (or more) independently acting negligent defendants (or one negligent defendant and one or more negligent, independently acting others).
In sum, the subject matter of this case is not one covered by the Jones Act. Moreover, there is no settled body of Jones Act law addressing the issue now before us, and there certainly was no settled body of law, either under the FELA or otherwise, addressing the issue at the time the Jones Act was adopted (or when the FELA was).[53] Hence, the Jones Act does not dictate the result here.
Other Considerations
Other than its appeal to authority, which is largely nonexistent, the majority levels essentially three objections to the rule espoused by this dissent.
First, the majority seems to suggest that this is a matter which should be taken care of by contract, or by avoiding doing business with potential co-defendants who might be or become insolvent. This is obviously a makeweight, at best. We do not normally justify adoption of rules that are illogical and unfair on the basis that parties might often be able to contract around the illogie or unfairness we are thus creating. Moreover, the majority’s rationale in this respect is inconsistent with the settled rule that one is not ordinarily hable for the independent fault of an independent contractor. The majority would have it that such liability should always be imposed because the owner can recover in indemnity or contribution from the contractor, and if that is precluded by the contractor’s insolvency or unavailability, then the owner has no one but himself to blame, as he should not have done business with the contractor. Presumably under this approach, no one would contract with an immune entity such as a county. Finally, how, in our hypothetical collision involving the shrimper, the Exxon crew boat, and the pleasure craft, can any of these parties — having no prior contact one with the other — be expected to have contracted with each other in advance of the accident?
Next, the majority invokes the notion that the plaintiffs recovery should be maximized. However, if that were the guiding principle, we could simply disregard, or perhaps give only half weight to, the plaintiffs contributory negligence. And, again reverting to our hypothetical collision, why do we want to strain to make the shrimper’s master-owner pay Exxon more than half Exxon’s damages, even though Exxon’s crew boat is every bit as much at fault as the shrimper, just because the little pleasure craft, acting wholly independently of the shrimper with which it has never had any contact, was also negligent?
*1172 Finally, the majority objects because the dissent’s approach, in contrast to that of the UCFA, does not require the defendant to first, and after judgment, establish that another defendant or actor is insolvent or unreachable (or immune) so that full contribution is unavailable from that other defendant, before that other defendant’s “equitable share” is partially reallocated to the negligent plaintiff. Of course, under the UCFA and Apportionment of Liability, if the other defendant is determined to be insolvent before judgment, then the “reallocation” will be in the original judgment, and the original judgment will give the negligent plaintiff the same maximum recovery from the solvent defendant as would be the case under the rule advocated in this dissent. More importantly, however, the substance of the UCFA and Apportionment of Liability approach is clearly that the negligent plaintiff should not be able to cause any one defendant to ultimately bear a greater fraction of the plaintiffs damages than the fault of that defendant is of the total of the fault of the plaintiff and that defendant. In other words, beyond that limit, that defendant is simply not ultimately liable to the negligent plaintiff.[54] Why should that defendant be made the collection agent for the negligent plaintiff as to sums for which that defendant is not ultimately liable?[55] Why should one party be the collection agent for another?
Moreover, to say that the approach of this dissent puts an unfair collection burden on the negligent plaintiff is certainly to ignore the longstanding general maritime law rule that even the innocent plaintiff who is personally injured in an accident as to which two defendants equally at fault are before the court (either by being sued directly or brought in under Rule 14(c) or its precursors) recovers judgment initially from each defendant for only half his damages, and can go beyond that as to each only by first showing his (plaintiffs) inability to collect from the other defendant the latter’s half. The majority has simply ignored this long *1173 standing rule of the general maritime law.[56]
The Judicial Role in the General Maritime Law
As the Supreme Court said in Edmonds, “[a]dmiralty law is judge-made law to a great extent.” Id. 443 U.S. at 259, 99 S.Ct. at 2756. Indeed, “the Judiciary has traditionally taken the lead in formulating flexible and fair remedies in the law maritime.” Reliable Transfer, 421 U.S. at 409, 95 S.Ct. at 1715. And, as the Supreme Court observed on yet another occasion: “Absent a relevant statute, the general maritime law, as developed by the judiciary, applies ... the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules.” East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864-865, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986) (emphasis added).
In East River, the Court “jointed] the Courts of Appeals” in adopting strict products liability, thus doing away with the traditional requirement of negligence in such instances. The Court in both Reliable Transfer and Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), overruled its own long-standing and consistently and frequently enforced precedents. But, no such departure from settled and clearly established precedent is required to adopt the approach taken in this dissent. Nevertheless, it is appropriate to note that in Reliable Transfer the Supreme Court declined to continue with a rule it considered “unnecessarily crude and inequitable,” despite that rule’s lesser “problems of proof’ and “facile application.” Id. at 408, 95 S.Ct. at 1714. Reliable Transfer departed from a settled rule that “has continued to prevail in this country by sheer inertia rather than by reason of any intrinsic merit.” Id. at 410, 95 S.Ct. at 1715.
There is no relevant statute here, nor any clearly established rule, and we should reject an approach based on abstract doctrinal reflex and inertia rather than intrinsic merit. And, the majority’s approach is one rejected *1174 by four-fifths of the states. To borrow from Pope & Talbot, admiralty should rather employ a “fairer and more flexible rule which allows such consideration of contributory negligence in mitigation of damages as justice requires.” Id. at 409, 74 S.Ct. at 204 (emphasis added). Justice, it seems to us, requires that the negligent defendant bear no greater — or lesser — part of the negligent plaintiffs total damages than that fraction which such defendant’s negligence is of the total negligence of the two of them; and that there is no reason to charge a negligent defendant with all, while charging the negligent plaintiff with none, of the fault of an independent third party, just as there is no reason to charge all such third party fault to the negligent plaintiff. The majority repeats “joint and several liability” as if it were some kind of magical mantra or totem which both banishes all dangers of rational analysis and dispenses with the need for authority dealing with the issue here posed: how does admiralty compare fault when both the plaintiff and a defendant are at fault and so also is at least one other independent actor (whether or not likewise a defendant). The majority abjures any meaningful normative defense of its position, and the best authority it can come up with is Joia, a 1987 Jones Act case that treats the matter as res nova and wrongly assumes that the only alternative to its result is pure several liability that assigns all the third party’s fault to the plaintiff. An approach such as that taken by Judge Friendly in Kinsman — which is flatly inconsistent with that of the majority — simply accomplishes a just result, as does the position of this dissent.
Conclusion
For the foregoing reasons, I respectfully dissent.
Appendix
Formula for Calculation of Several Liability of Each Defendant and Joint Liability of Defendants
1. Three defendants and plaintiff each guilty of causative fault
(a) VARIABLES
Q = Plaintiffs total damages
= Plaintiffs % of total fault
DI, D2, D3 = each defendant’s % of total fault
Ml, M2, M3 = each defendant’s maximum liability
Yl, Y2, Y3 = each defendant’s several liability
=
(b) FORMULAS
Ml = DI Q D1 + X
M2 = D2 Q D2 + X
M3 = D3 Q D3 + X
I N J-H
I N) P-Í
I N CO
Z = [(1.00 - X) * Q] - Y1 - Y2 - Y3
(c) EXAMPLE 1
Q = $100,000
*1175 o tH El
o 03 II 1 — i
o CO II 03
o ^ II CO
Ml = DI Q = 20 $100,000 = (2/3) * $100,000 = $66,667 D1 + X 20+10
M2 = D2 Q = 30 $100,000 = (3/4) * $100,000 = $75,000 D2 + X 30+10
M3 = D3 Q = 40 $100,000 = (4/5) * $100,000 = $80,000 D3 + X 40+10
05 05 05 05 -q I ÍS1 tsj i t — 1 H
-q ÜT O O o I CSJ n i 03 DO
00 O 'O O O I ÍSJ tq i 00 CO
Z = [(1.00 - X) * Q] - Y1 - Y2 - Y3
Z = $90,000 - ($66,667 - Z) - ($75,000 - Z) - ($80,000 - Z)
= [(1.00 - .10) * $100,000] - Y1 - Y2 - Y3
Z = (.90 * - Y1 - Y2 - Y3
Z = 3Z - $131,667
2Z = $131,667
Z = $65,833
Y1 = $66,667 - $65,833 = $834
Y2 = $75,000 - $65,833 = $9,167
Y3 = $80,000 - $65,833 = $14,167
The judgment thus provides plaintiff a total recovery of $90,000 composed of the following:
D1 D2 D3 Total Recovery
Several Liability $ 834 Joint Liability 65,833 05 tO 'co'í — *• CO 05 CO 00 ■m-05 h-‘ oo'Í-a CO 05 CO -q 05 trizo 'bo'í-A CO 05 CO -q
Total $66,667 $75,000 $80,000 $90,001
(d) EXAMPLE 2
o o o o o II
II
oa II T — I
03 II 03
03 II CO
Ml = DI Q = 25 $100,000 = (1/2) * $100,000 = $50,000 D1 + X 25+25
M2 and M3 are calculated the same as Ml
Y1 = Ml - Z = $50,000 - Z
Y2 and Y3 are calculated the same as Y1
= [(1.00 - X) * Q] - Y1 - Y2 - Y3 N
= [(1.00 - .25) * $100,000] - Y1 - Y2 - Y3 CSJ
= (.75 - - - N
= $75,000 - ($50,000 - Z) - - - - N
*1176 Z = 3Z - $75,000
2Z = $75,000
Z = $37,500
o o LO oí f — i »/*N o o o o 1 *<•> „• CO cn o o K} H
o o IO oí tH i" /“> — o ~o o o 1 CO cn o o to
I
The judgment thus provides plaintiff a total recovery of $75,000 composed of the following:
Total Recovery D1 D2 is
$37,500 37,500 Several Liability $12,500 $12,500 Joint Liability 37,500 37,500 o o o o lO LO oí 1-H CO
$50,000 $75,000 Total $50,000 $50,000
(e) EXAMPLE 3, FOUR DEFENDANTS
Q = $100,000
X =20
D1 = 20
D2 = 20
D3 = 20
D4 = 20
Ml = DI Q = 20 $100,000 = (1/2) * $100,000 = $50,000 D1 + X 20+20
M2, M3 and M4 are calculated the same as Ml
Y1 = Ml - Z = $50,000 - Z
Y2, Y3, and Y4 are calculated the same as Y1
I co kH I hH ¡X I I 1 o o II N
KÍ I I I o o 1 1 o o II Csl
$ £3 I . 1 O -ee-II CsJ
N o o o o lO CSJ O O o o ■e/9N i o o o cT m tsi O O o , I o o O II N
CR r*H I II N
o C/3 II CO
II
Y1 = $50,000 - $40,000 = $10,000
Y2 = $50,000 - $40,000 = $10,000
Y3 = $50,000 - $40,000 = $10,000
= - =
The judgment thus provides plaintiff a total recovery of $80,000 composed of the following:
Total Recovery D2 D3 D4 ... U l>-L
$10,000 $10,000 $10,000 40,000 40,000 40,000 Several Liability Joint Liability •w o o © o o o o o I — 1 © © o o o o o o
$80,000 $50,000 $50,000 $50,000 $50,000 Total
*1177 (f) EXAMPLE 4, TWO DEFENDANTS
Q = $100,000 X =20 D1 = 20 D2 = 60
mi = m o = no non = n/2) * ifiinn.nnn = .teo.ono
D1 + X 20+20
M2 = D2 0 = 60 $100,000 = (3/4) * $100,000 = $75,000
D2 + X 60+20
yi = mi - 7, = ten nnn - z
Y2 = M2 - Z = $75,000 - Z
z = m.oo - X) * oi - yi - Y2
Z = r (1.00 - .20) * $100.0001 - Yl - Y2
v _ < on * nn nnro _ vt _ V9
Z = $80,000 - ’($50,000 - Z) - ($75,000 - Z)
Z = 2Z - $45,000
Z = $45,000
Yl = $50,000 - $45,000 = $5,000 Y2 = $75,000 - $45,000 = $30,000
The judgment thus provides plaintiff a total recovery of $80,000, composed of the following:
Total
DI D2 Recovery
Several Liability $ 5,000 $30,000 $35,000
Joint Liability 45,000 45,000 45,000
Total $50,000 $75,000 $80,000
2. SPECIAL INSTANCES
(a) With as many as four parties (including the plaintiff) guilty of causative fault, the formula will, in certain instances of unusual fault distributions, produce a negative several liability number for a particular defendant (where as many as five parties, including plaintiff, are guilty of causative fault, as many as two such negative several liability numbers are possible in certain instances of unusual fault distributions). In such instances, additional steps must be added to the formula, resulting in a lowered joint liability for that particular defendant and an additional component of joint liability for the remaining defendants (if there are two defendants with initial negative several liability numbers, there will be two additional components of joint liability for other defendants). The additional necessary steps are set out below.
(b) Formula for three defendants showing additional steps where under initial steps one defendant’s several liability is a negative number
Q = $100,000
X =30
D1 = 30
D2 = 30
D3 = 10
Ml = DI Q = 30 $100,000 = (1/2) * $100,000 = $50,000
*1178 D1 + X 30 + 30
M2 = D2 Q D2 + X 30 30 + 30 $100,000 = (1/2) * $100,000 = $50,000
M3 = D3 Q = 10 $100,000 = (1/4) * $100,000 = $25,000 D3 + X 10 + 30
Yl Ml - Z = $50,000 - Z
Y2 M2 - Z = $50,000 - Z
Y3 M3 - Z = $25,000 - Z
Z = [(1.00 - X) * Q] - Yl - Y2 - Y3
Z - [(1.00 - .30) * $100,000] - Yl - Y2 - Y3
Z = (.70 * $100,000) - Yl - Y2 - Y3
Z = $70,000 - ($50,000 - Z) - ($50,000 - Z) - ($25,000 - Z) Z = 3Z - $55,000
2Z = $55,000
Z = $27,500
Yl = $50,000 - $27,500 = $22,500
Y2 = $50,000 - $27,500 = $22,500
Y3 = $25,000 - $27,500 = -$2,500
CAVEAT: If Y3 is < 0, then reduce the value of Z to that of M3; then add Y3 to the value of Yl; then add Y3 to the value of Y2; then multiply Y3 by -2 and set that number equal to J; then set Y3 equal to zero.
Z = Joint liability of DI, D2, and D3
J = Joint liability of DI and D2
STEP 1: Z = M3
Z = $25,000
STEP 2: Yl = Yl + Y3
Yl = $20,000
STEP 3: Y2 = Y2 + Y3
Y2 = $20,000
STEP 4: J = Y3 * -2
J = $5,000
STEP 5: Y3 = 0
Y3 =0
The judgment thus provides the plaintiff a total recovery of $70,000 composed of the following:
Total DI D2 D3 Recovery
Several Liability Joint D1 & D2 Joint DI, D2 & D3 $20,000 $20,000 5,000 5,000 25,000 25,000 $ -0- $40,000 -0- 5,000 25,000 25,000
Total $50,000 $50,000 $25,000 $70,000
(c) Formula for four defendants showing additional steps when under initial steps one defendant’s several liability is a negative figure
Q = $100,000
X =25
DI = 25
*1179 LO Cq <N|
O (M CO
LO ^
Ml $50,000
M2 $50,000
M3 $44,444.44
M4 $16,666.67
$28,703.70
Y1 $21,296.30
Y2 $21,296.30
Y3 $15,740.74
Y4 -$12,037.03
CAVEAT: If Y4 is < 0, then reduce the value of Z to that of M4; then add 1/2 of Y4 to Yl; then add 1/2 of Y4 to Y2; then add 1/2 of Y4 to Y3; then add 1/2 of Y4 to Y4 and set this value equal to J; multiply J by -1; then set Y4 equal to zero.
= Joint liability of Dl, D2, D3, and D4 N
= Joint liability of Dl, D2, and D3 t — i
STEP 1: Z = M4
Z = $16,666.67
STEP 2: Y1 = 1/2Y4 + Y1
Y1 = $15,277.78
STEP 3: Y2 = 1/2Y4 + Y2
Y2 = $15,277.78
STEP 4: Y3 = 1/2Y4 + Y3
Y3 = $9,722.22
STEP 5: J = 1/2Y4 + Y4
J = -$18,055.55
STEP 6: J = J * -1
J = $18,055.55
STEP 7: Y4 = 0
Y4 =0
The judgment thus provides the plaintiff a total recovery of $75,000 composed of the following:
Total Dl D2 D3 D4 Recovery
-O- $40,277.78 666.67 16,666.67 -O- 18,055.56 Several Liab’y Joint All D’s Jnt Dl, D2, D3 $15,277.78 16,666.67 18,055.55 $15,277.78 16,666.67 18,055.55 $ 9,722.22 16,666.67 18,055.55
Total $50,000.00 $50,000.00 $44,444.44 $16,666.67 $75,000.00
(d) Formula for four defendants showing additional steps when under initial steps the several liability of each of two defendants is a negative number
Q = $100,000
X =30
Dl = 20
D2 = 40
D3 = 6
D4 = 4
Ml = $40,000
M2 = $57,142.86
*1180 M3 = $16,666.67
M4 = $11,764.70
Z = $18,524.75
Yl =
Y2 = $38,618.11
Y3 = — $1,858.08
Y4 = - $6,760.05
CAVEAT: If Y3 and Y4 are < 0, then reduce the value of Z to that of M4; then subtract Z from M3 and set that value equal to J; then add Y3 and Y4 to the value of Yl; then add Y3 and Y4 to the value of Y2; then set Y3 and Y4 equal to zero; then subtract Yl and Z and J from Ml and set that value equal to K.
= Joint liability of Dl, D2, D3, and D4 N
= Joint of DI, and D3 1-5
= Joint liability of DI and D2 M
STEP 1: Z = M4
Z = $11,764.70
STEP 2: J = M3 - Z
J = $4,901.97
STEP 3: Yl = Yl + Y3 + Y4
Yl = $12,857.12
STEP 4: Y2 = Y2 + Y3 + Y4
Y2 = $30,000
STEP 5: Y3,4 = 0
Y3 =0
Y4 =0
STEP 6: K = Ml - Yl - Z - J
K = $10,476.21
The judgment thus provides plaintiff a total recovery of $70,000 composed of the following:
D1 D2 D3 D4 Total Recovery
Several Liab’y $12,857.12 $30,000.00 $ -0- $ -0-$42,857.12
Joint All D’s 11,764.70 11,764.70 11,764.70 11,764.70 11,764.70
Joint D1,D2,D3 4,901.97 4,901.97 4,901.97 -0-4,901.97
Jnt D1 & D2 10,476.21 10,476.21 -0--0-10,476.21
Total $40,000.00 $57,142.88 $16,666.67 $11,764.70 $70,000.00

. Unlike Simeon, this case does not involve a Jones Act seaman.

. For the reasons stated by Judge DeMoss, in my view the choice of law issue should be resolved in favor of UAE law.
While I find much to agree with in Judge DeMoss's comments regarding Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), I do not believe that issue is before us. Penrod was found guilty of negligence, as well as of unseaworthiness, and while those faults were combined in an “and/or" form in the *1145 percentage of fault determination, no complaint of the form of that submission appears to have been made on this appeal. Moreover, both the negligence and the unseaworthiness related to the same condition. Finally, it is undisputed that a defendant liable for unseaworthiness is as much entitled to a reduction of plaintiff's recovery for plaintiff’s negligence as is a defendant liable only for negligence. See, e.g., Fontenot v. Teledyne Movible Offshore, Inc., 714 F.2d 17, 19-20 (5th Cir.1983); Scott v. Fluor Ocean Services, Inc., 501 F.2d 983, 984 (5th Cir.1974).

. This opinion addresses only instances of indivisible damages, where the fault of each of the parties is a proximate cause of all the damages.

. Similarly, in certain other circumstances under pure several liability, a plaintiff whose causative negligence was only a tenth of that of a particular defendant might nevertheless be able to hold that defendant liable for no more than a tenth of plaintiff's damages.

. “Quite apart from any question of vicarious liability or joinder of defendants, the common law developed a separate principle, that a defendant might be liable for the entire loss sustained by the plaintiff, even though the defendant's act concurred or combined with that of another wrongdoer to produce the result— or, as the courts have put it, that the defendant is liable for all consequences proximately caused by the defendant’s wrongful act. The rule was first applied in actions against a single defendant, where there was no concert of action, and therefore no joinder would have been possible, and there was no suggestion of a joint tort.’ ...
In England, such concurrent but independent wrongdoers were not confused with joint tortfeasors because there could be no joinder in the absence of concerted action. They had to be sued separately.... Under the more liberal American rules as to joinder, defendants whose negligence has concurred to produce a single result have been joined in one action, and by loose usage have been called joint tortfeasors.” Id. at 328-329 (footnotes omitted).

. The only other principled justification for assigning to the defendant all the fault of the other actor would be that the two had acted in concert, or that for some other reason the defendant was vicariously liable for the fault of the other actor. This was the original basis for common law joint liability. See Prosser and Keaton on Torts (West 5th ed. 1984) § 46 at 322-323 ("The original meaning of a joint tort' was that of vicarious liability for concerted action. All persons who acted in concert to commit a trespass, in pursuance of a common design, were held liable for the entire result.... Each was therefore liable for the entire damage done.... All might be joined as defendants in the same action at law, and since each was liable for all, the jury would not be permitted to apportion the damages.... This principle, somewhat extended beyond its original scope, is still law....” (footnote omitted)).
In an appropriate setting, even under a comparative fault regime, this principle would justify charging the other actor's fault all to the defendant, with none being charged to the contribu-torily negligent plaintiff. However, in the situations we are here considering, the defendants (or the defendant and the third party actor) act independently of each other and the relationship between them is not such as to otherwise give rise to vicarious liability (i.e., if one were not at fault there would be no basis for charging the other's fault to him). Accordingly, the concerted action or vicarious responsibility principle does not, in the class of case we are considering, justify the majority's approach.

. 46 U.S.C. § 688 (“in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railroad employees should apply”). See also Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 789-93, 69 S.Ct. 1317, 1321-22, 93 L.Ed. 1692 (1949); Rohde v. Southeastern Drilling Co., Inc., 667 F.2d 1215, 1217 (5th Cir.1982).

. Mississippi, Georgia, Nebraska, Wisconsin, and South Dakota, the latter in 1941 by a statute allowing recovery when a plaintiff's negligence was “slight and defendant’s was gross in comparison.” Schwartz, supra, §§ 1-1 at 2, 1-4(b)(4) at 14-15.

.Schwartz, supra, § 1-1 at 2. Comparative fault legislation was enacted in Arkansas in 1955, in Puerto Rico in 1956, and in Maine in 1965. Id.

. The committee preparing the UCFA for consideration by the Commissioners was composed of distinguished legal scholars and judges, including Judge R. Floyd Gibson and Professor Victor E. Schwartz, and was chaired by Dean John W. Wade of Vanderbilt University School of Law. Id. at 42.

. The relevant portions of section 2 are as follows:
“(a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under Section 6, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating:
(1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
(2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under Section 6. For this purpose the court may determine that two or more persons are to be treated as a single party.
(c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under Section 6, and enter judgment against each party liable on the basis of rules of joint-and-several liability. For purposes of contribution under Sections 4 and 5, the court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.
(d) Upon motion made not later than [one year] after judgment is entered, the court shall determine whether all or part of a parly's equitable share of the obligation is uncollectible from that party, and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. The party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.” (Emphasis added).

.12 U.L.A. West Supp.1994 at 50.

. The relevant illustrations given in the comments are as follows:
"Illustration No. 2. (Multiple-party situation). A sues B, C and D. A’s damages are $10,-000.
A is found 40% at fault.
B is found 30% at fault.
C is found 30% at fault.
D is found 0% at fault.
A is awarded judgment jointly and severally against B & C for $6,000. The court also states in the judgment the equitable share of the obligation of each party:
A's equitable share is $4,000 (40% of $10,-000).
B's equitable share is $3,000 (30% of $10,-000).
C's equitable share is $3,000 (30% of $10,-000).
Illustration No. 3. (Reallocation computation under Subsection (d)).
Same facts as in Illustration No. 2.
On proper motion to the court, C shows that B's share is uncollectible. The court orders that B's equitable share be reallocated between A and C....
A's equitable share is increased by $1,714 (4/7 of $3,000).
C's equitable share is increased by $1,286 (3/7 of $3,000).” 12 U.L.A. West.Supp. 199 at 51.

. It is also to be noted that section 2 of the UCFA limits allocation of fault to those who are parties to the action, it being "assumed that state procedure provides for bringing in third-party defendants as parties.” Comment to § 2, 12 U.L.A. West.Supp. 1994 at 50. The comment explains:
"The limitation to parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties. This is a deliberate decision.... The more parties joined whose fault contributed to the injury, the smaller the percentage of fault allocated to each of the other parties, whether plaintiff or defendant.” Id.
Because the fault of those not parties is not ascertained, it cannot be allocated to any party, plaintiff or defendant, and this means that the ultimate result is controlled by the comparison of fault only as between the parties. In our earlier example of the collision involving the shrimper, the crew boat, and the pleasure craft, if the pleasure craft is not a party, the crew boat, if equally at fault with the shrimper, may recover from the shrimper only half its damages, notwithstanding the facts might show that pleasure craft was also equally at fault with the other two vessels. In essence, whatever fault is attributable to the pleasure craft is allocated between the other two vessels in the same proportion as the fault of each bears to the total fault of both.

. "... [Ijhis and future cases shall apply the doctrine of pure comparative fault in accordance with the Uniform Comparative Fault Act §§ 1-6, 12 U.L.A.Supp. 35-45 (1983), a copy of which, with commissioners’ comments, is appended to this opinion as Appendix A.” Id. (footnote omitted).
In a footnote, the court noted that it did not adopt the proportionate settlement credit approach of section 6 of the UCFA only because that conflicted with the express provisions of a Missouri statute calling for dollar for dollar credit; the court invited the legislature to reconsider the settlement credit provision and adopt section 6 of the UCFA. Id. at n. 10.

. The Maritime Law Association has recommended a model Maritime Comparative Responsibility Act, which is almost the same as the UCFA, and which, with but slight modification, was introduced in Congress September 12, 1991, as H.R. 3318, 102d Congress, 1st sess. See 7 Benedict on Admiralty (7th ed.) §§ 7 & 8. Both the Maritime Law Association proposal and H.R. 3318 contain reallocation provisions identical to section 2(d) of the UCFA (section 2(3) of the Maritime Law Association proposal and section 3(d) of H.R. 3318). Id., § 7 at 1-29; § 8 at 1-46, 1-47. The comments to this section of the Maritime Law Association proposal include the following:
"Reallocation. Reallocation of the equitable share of the obligation of a party takes place when his share is uncollectible. Reallocation takes place among all parties at fault. This includes a claimant who is contributorily at fault. It avoids the unfairness both of the common law rule of joint-and-several liability, which would cast the total risk of uncollectibility upon the solvent defendants, and of a rule abolishing joint-and-several liability, which *1151 would cast the total risk of uncollectibility upon the claimant." Id. § 7 at 1-35 (emphasis added)
These comments also include an illustration 3, which is the same as illustration 3 in the comments to section 2 of the UCFA, as set out in note 13 above. Id. § 7 at 1-36, 1-37. Again, this illustration involves a 40% negligent plaintiff suffering $10,000 damages, and two 30% negligent defendants, from one of whom nothing can be collected. The ultimate result is that the plaintiff's recovery against the other defendant is $4,286, which is Itths of plaintiff's total damages.

. It may also be noted that Texas has held that the employer’s or co-employee's "negligence should not be considered in a third party prod *1152 ucts liability action when the plaintiff's injuries were covered by workers' compensation.” Magro v. Ragsdale Bros., Inc., 721 S.W.2d 832, 836 (Tex.1986). This necessarily means that if the plaintiff is guilty of contributory fault, his recovery will be based on a comparison of his fault with that only of the defendant third party, precisely the general approach suggested here.

. The principally relevant proposals (which have not been officially presented to the Council or membership of the American Law Institute) are as follows;
"§ 24A Liability of Multiple Tortfeasors for Indivisible Harm
If two or more persons' independent tortious conduct is a legal cause of an indivisible injury, each person is jointly and severally liable for the recoverable damages caused by the tortious conduct, subject to the reallocation provision of § 25k." Id. at 231.
"25A Reallocation of Damages Based on Unen-forceability of Judgment
A defendant who is or may be held jointly and severally liable pursuant to § 24A may move to reallocate the liability of another defendant because a judgment for contribution against the latter defendant will be or is unenforceable, in whole or in part. If the moving defendant establishes that a judgment for contribution against another defendant will be or is unenforceable, the court shall reallocate liability for the damage award. The portion of the defendant's share of liability for which a judgment is not or will not be enforceable shall be reallocated to the remaining parties, including the plaintiff, in proportion to the percentages of responsibility assigned to the other defendants and the plaintiff." Id. at 237 (emphasis added).
Comment a to section 25A states in relevant part:
"The justification for requiring one defendant to bear the burden of an insolvent defendant's negligence was that as between a culpable defendant and an innocent plaintiff, the culpable defendant should bear the full burden of the plaintiff's injuries. With the advent of comparative responsibility, in which plaintiffs who are at fault may still recover a portion of their damages, the justification for requiring defendants to bear the entire share of insolvent defendants no longer exists." Id. at 238 (emphasis added).
Comment b to section 25A provides in part: “Ordinarily, a motion to reallocate a party's share of liability due to the unenforceability of the judgment should he made within a year of the entry of judgment. In those instances in which the unenforceability of any judgment is established before entry of judgment, the judgment should reflect the reallocation of the defendant's share for which a judgment would be unenforceable." Id. at 238-239 (emphasis added).
Proposed section 27A treats the effect of settlement in the same manner as section 6 of the UCFA. Apportionment of Liability at 265. Proposed section 28A(2) provides that in an employee-plaintiff's suit against a third party, the employer’s fault is not inquired into if local law does not permit either any reduction in plaintiff's recovery on that account or a contribution claim by the defendant against the employer (section 28A(1) addresses employer fault where those conditions do not obtain). Id. at 281. Proposed section 29A provides:
"§ 29A Effect of Responsibility Assigned to Other Immune Persons
If a person other than the plaintiff's employer is immune from suit by the plaintiff and immune from a contribution claim by any defendant pursuant to the applicable law of the jurisdiction, the fact finder should assign a percentage of responsibility to the immune party and the immune party’s share of responsibility should be treated the same as provided in § 25A for a defendant whose share of responsibility is uncollectible." Id. at 290.

. In rejecting the reallocation approach in strict liability in tort cases, the Texas Supreme Court stated in Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 429 n. 9 (Tex.1984):
"An alternative would be to reallocate the insolvent tortfeasor’s share of liability among all parties whose actions or products were a cause of the injuries, including the negligent plaintiff. This suggestion is attractive and was endorsed by a distinguished Special Committee of the Tort and Compensation Section of the State Bar. As a judicial rule, however, reallocating the insolvent’s share would create problems of post-trial jurisdiction and finality of judgments.”
No such problems of post-trial jurisdiction and judgment finalily are implicated in the approach taken by this dissent.

. No one contends that the total judgment should be for other than $66,666.67. And, all would agree that a plaintiff suffering total damages of $100,000 and found 20% at fault, with each of the two defendants being 40% at fault, may not recover $66,666.67 C%o x 100,000) from each of the two defendants for a total of $133,333.33.

. The judgment would further provide that if a defendant paid more on the judgment than $33,-333.33 ()4 x $100,000), such defendant would be entitled to contribution from the other defendant in the amount of the excess so paid.

. In this instance the judgment would also provide that if the shrimper paid more than $20,000 (20% of $100,000) on the judgment it would be entitled to contribution from the pleasure craft for the excess, and that if the pleasure craft paid more than $60,000 (60% of $100,000) on the judgment it would be entitled to contribution from the shrimper for the excess.

. The judgment would also provide that any defendant who paid more on the judgment than his percentage of the total fault of all parties multiplied by plaintiff's total damages ($40,000 for defendant A) would be entitled to contribution from any other defendant who paid less than his percentage of the total fault of all parties multiplied by plaintiff’s total damages ($30,000 for defendant B; $20,000 for defendant C) to the extent of the lesser of the excess or the deficiency. Thus if A paid $45,000 on the judgment, B paid only $27,000, and C paid only $18,000, A would be entitled to $3,000 in contribution from B, and $2,000 in contribution from C. Of course, complications could arise if contribution were uncollectible from one defendant, but no more so than in any case in which there are three or more liable defendants and the plaintiff is not negligent.

. The majority (majority op. fn. 13) mistakenly suggests that a judgment in the simple form suggested (limiting a negligent plaintiff's recovery from any one defendant to the fraction of plaintiff's damages represented by that defendant's percentage of the total negligence of all parties at fault divided by the total of that defendant's and the plaintiff’s respective percentages of the total fault of all parties) produces an ultimately different result from that produced by the algebraic formula (providing for some several and some joint and several liability) in situations involving three (or more) defendants, only one of whom is insolvent. That is simply wrong. Take the case of a plaintiff, sustaining $100,000 total damages, who is 25% at fault, and three defendants (Dl, D2, and D3), each of whom is likewise 25% at fault. The simple form judgment here recommended would provide plaintiff a total recovery of $75,000, not more than $50,000 of which could be collected from any one defendant, and with provision that any defendant paying less than $25,000 would be subject to contribution from any defendant paying more than that. The judgment formulated in terms of both several and joint liability would similarly award plaintiff a total recovery of $75,000, composed of $12,500 several liability of each of the three defendants plus $37,500 joint and several liability of the three together (see appendix par. 1(d), example 2), and would likewise provide that any defendant paying less than $25,000 would be subject to contribution from any defendant paying more than that. In each instance the maximum amount plaintiff can recover in total ($75,-000) and the maximum he can recover from any one defendant ($50,000) are the same.
The majority posits the situation where (as it eventuates after judgment) nothing is collectible from D3, so that plaintiff might then choose to collect $50,000 from Dl and $25,000 from D2 (instead of $37,500 from each), which is unfair to Dl, because contribution is not collectible from D3 (who is insolvent) and is not provided for in the judgment as to D2 (as D2 has paid $25,000). But this is a fault shared by both forms of judgment. Importantly, it is also a fault in the form of judgment the majority espouses, namely an award to the plaintiff of $75,000 against all three defendants jointly and severally, with provision for contribution in favor of any defendant paying more than $25,000 against any paying less. In that situation, plaintiff may also choose to collect $50,000 from Dl and $25,000 from D2, and Dl is then in the exact same fix. To the extent the majority understands the matter — and it is by no means clear that it does — it is simply the pot calling the kettle black.
Of course, in any case it could be further provided that to the extent any defendant was unable to pay its full equitable share ($25,000 in our above three-defendant example) the level at which the remaining two defendants became obligated for or entitled to contribution would increase by their relative share (here 50% for Dl and D2 each, as they are equally at fault) of the deficiency, so that in the example if D3 could pay none of his $25,000 equitable share, then Dl (who paid plaintiff $50,000) could collect $12,-500 in contribution from D2 (who paid $25,000 but is exposed to an additional $12,500 in contribution liability by being allocated for this purpose 50% of the $25,000 uncollectible from D3). The merits or demerits of such an approach to contribution do not vary as between the judgment espoused by the majority ($75,000 for plaintiff as against all three defendants jointly and severally) and either of the forms espoused by this dissent ($75,000 for plaintiff but not more than $50,000 from any one defendant, or $12,-500 from each of three defendants severally plus $37,500 from all three jointly).
The majority's example of a negligent plaintiff and three negligent defendants, only one being insolvent, is simply a red herring, whether in its plain vanilla form or with its contribution problem overlay.

. The Juniata involved a collision between the steam tug Neafie, towing a flatboat belonging to the United States, and the steamship Juniata, as a result of which the flatboat and The Neafie were lost and The Neafie's owner, Pursglove, suffered serious personal injuries. Pursglove and the United States each filed separate libels against The Juniata, which were tried together. The district court found both The Neafie and The Juniata at fault and held The Juniata liable to the United States and to Pursglove for half their respective total damages (Pursglove's being primarily for personal injuries). In Pursglove’s case this judgment was affirmed, "fault on both sides being established, an apportionment of the damages necessarily followed." Id. 93 U.S. at 339. But it was held that the United States was entitled to all its damages against The Juniata because the United States was not at fault and The Neafie (and Pursglove) were not parties to the United States’ libel:
"The branch of the case relative to the United States is upon a different footing. Their flatboat is neither alleged nor proved to have been in anywise in fault. The principle of apportionment has, therefore, no application to them. Their boat not being inculpated, they are entitled to full damages. The decree of the circuit court is erroneous in not giving it to them.
*1159 We should adjudge that half the amount should be paid by the tug [The Neafie], and the other half by the steamer [The Juniata], but that the libel of the United States is against the steamer alone. The tug, therefore, cannot be reached in this proceeding.” Id., at 340.

. See also, e.g., The Hudson, 15 F. 162, 164 (S.D.N.Y.1883):
"This decision [referring to The Atlas ], however, was not designed to affect, and does not affect in any degree, the right of the owners of the several vessels liable to have among themselves an apportionment of the damages whenever all the parties are before the court. The rule in the admiralty in cases of negligence, as is well known, is in direct opposition to the rule of the common law. By the latter, if the plaintiff be guilty of negligence, he recovers nothing; while in admiralty the damages, whether to the libelant’s vessel or to the claimant’s, or to the cargo of either, are apportioned equally between the vessels in fault. And where the innocent owner of the cargo, or of a tow in charge of one vessel, sues and recovers against both vessels, the libelant cannot recover a judgment in solido against both for his whole damage, with a right to levy his execution in full against either alone, as at common law, but only a judgment for a moiety of the damages against each vessel, with an alternative right or recourse against either for so much of the moiety adjudged to be paid by the other as he is unable to collect from the latter. This principle, first sanctioned by the judgment of the supreme court in the case of The Washington and the Gregory, 9 Wall. 513, 516, was after-wards, upon full deliberation, reaffirmed in the case of The Alabama and the Game-Cock, 92 U.S. 695 [23 L.Ed. 763], and has been repeatedly asserted in subsequent cases. The Virginia Ehrman, 97 U.S. [309] 317 [24 L.Ed. 890]; The City of Hartford, 97 U.S. [323] 329, *1160 330 [24 L.Ed. 930]; The Atlas, supra; The Civilta, 103 U.S. 699 [26 L.Ed. 599].” (Emphasis added).

. When two vessels were at fault, but only one was sued, to avoid being held liable to an innocent third party for that party's entire loss, as in The Atlas and The Juniata, and to invoke the "moiety” rule, the vessel sued would seek to bring in the other vessel. This was originally allowed under the court's inherent power. The Hudson, 15 F. 162, 172-176 (S.D.N.Y.1883). This practice was soon confirmed by the Supreme Court rule. See The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586 (1890), where, immediately after observing that in The Atlas "the libelant was entitled to recover the entire amount of its damages from The Atlas, the tug not having been brought in as a party to the suit,” the Court goes on to state: "By rule 59 in admiralty, promulgated by this court March 26, 1883 ... the claimant or respondent in a suit for damage by collision may compel the libelant to bring in another vessel or party alleged to have been in fault.” The Max Morris, 137 U.S. at 11, 11 S.Ct. at 31. See also The Beaconsfield, 158 U.S. 303, 307-312, 15 S.Ct. 860, 862-863, 39 L.Ed. 993 (1895). Although Rule 59 technically applied only in collision cases, admiralty courts soon began to follow the same practice in non-collision cases and thus in both types of cases this was the practice "for over 30 years, sanctioned by rule in collision cases and by judicial decision in non-collision cases. Finally, in 1921, the Admiralty Rules expressly broadened the third-party practice to all maritime cases, providing for it in new Admiralty Rule 56." 3 Moore's Federal Practice (2d ed.) ¶ 14.31 [2] at 14-161. When the Admirahy Rules were merged with the Rules of Civil Procedure in 1966, this feature of admiralty practice was recognized in Fed. R.Civ.P. 14(c), allowing the defendant in admiralty cases to "bring in a third party defendant who may be wholly or partly liable ... to the plaintiff.” See 3 Moore's Federal Practice (2d ed.) V 14.31[1], ¶ 14.31[3]. The Advisoiy Committee Notes to the 1966 amendments to Rule 14 explain this aspect of Rule 14(c) as follows:
“Rule 14 was modeled on Admiralty Rule 56. An important feature of Admiralty Rule 56 was that it allowed impleader not only of a person who might be liable to the defendant by way of remedy over, but also of any person who might be liable to the plaintiff. The importance of this provision was that the defendant was entitled to insist that the plaintiff proceed to judgment against the third-party defendant. In certain cases this was a valuable implementation of a substantive right. For example, in a case of ship collision where a finding of mutual fault is possible, one shipowner, if sued alone, faces the prospect of an absolute judgment for the full amount of the damage suffered by an innocent third-party; but if he can im-plead the owner of the other vessel, and if mutual fault is found, the judgment against the original defendant will be in the first instance only for a moiety of the damages; liability for the remainder will be conditioned on the plaintiffs inability to collect from the third-party defendant." (Emphasis added).
The majority suggests (majority op. fn. 18) that these principles have no application to "maritime personal injury cases.” However, The Washington was solely a "maritime personal injury ” case, and the Supreme Court held that "[t]he damages were properly apportioned equally between the two vessels, the right being reserved to the [innocent] libelant to collect the entire amount of either of them in case of the inability of the other to respond for her portion.” Id., 76 U.S. at 516. See also The Juniata (personal injury). The majority's unsupported suggestion (fn. 18) that these principles went out with the "nineteenth century” is similarly misguided, as the above quotation from the Advisory Committee Notes to the 1966 Rule 14 amendments reflect. See also, e.g., Crain Brothers, Inc., 223 F.2d at 258; Empire Seafoods, Inc. v. Anderson, 398 F.2d 204, 217 (5th Cir.), cert. denied, 393 U.S. 983, 89 S.Ct. 449, 21 L.Ed.2d 444 (1968). Nor were these principles restricted to collision cases, as reflected by the adoption in 1921 of Admiralty Rule 56, blessing the line of judicial decisions which had extended The Hudson principles to noncollision cases, and the carry forward of these principles to Rule 14(c) in 1966.

. See also Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc., 417 U.S. 106, 110, 94 S.Ct. 2174, 2176-2177, 40 L.Ed.2d 694 (1974), where the Court similarly remarked on the breadth of the divided damages principle:
"... [X]he principle of division of damages in admiralty has, over the years, been liberally extended by this Court in directions deemed just and proper. In one line of cases, for example, the Court expanded the doctrine to encompass not only damage to the vessels involved in a collision, but personal injuries and property damage caused innocent third parties as well.... In other cases, the Court has recognized the application of the rule of divided damages in circumstances not involving a collision between two vessels, as where a ship strikes a pier due to the fault of both the shipowner and the pier owner, ... or where a vessel goes aground in a canal due to the negligence of both the shipowner and the canal company...."

. The Court further remarked:
"Whether in a case like this the decree should be for exactly one-half of the damages sustained, or might, in the discretion of the court, be for a greater or less proportion of such damages, is a question not presented for our determination upon this record, and we express no opinion upon it." Id.
Cf. The Lackawanna, 151 F. 499, 500 (S.D.N.Y.1907) (awarding injured negligent ferryboat passenger )4 recovery against ferryboat, as his conduct “constituted negligence ... to a greater degree than that of the ferryboat.”).

. Reliable Transfer states its holding as follows:
"We hold that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault." Id. 421 U.S. at 411, 95 S.Ct. at 1715-16.

. See, e.g., Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 271 n. 30, 99 S.Ct. 2753, 2762 n. 30, 61 L.Ed.2d 521 (1979) ("Reliable Transfer merely changed the apportionment from equal division to division on the basis of relative fault.”).

. Judge Moore dissented in part as to other aspects of the case. 338 F.2d at 727-728.

. Thus Benedict on Admiralty § 416 (6th ed. 1940), commences by stating in relevant part:
*1163 “Where suit in rem is brought by a party, e.g., a cargo owner, on a cause of action against two vessels, for damages caused by a collision between such vessels, or is brought by an innocent third party on a cause of action involving more than one vessel ... [e]ach vessel, if there be two at fault, is primarily liable for one-half of the damages ... [b]ut when one vessel is not able to respond for one-half of the damages, the other must make up the deficiency." Id. at 184-85.
Then follows the "[t]he decree, therefore,” language which we quoted in Empire.

. We also observe that while Gele references the portion of Empire at 398 F.2d 217, it does not specifically reference Empire's footnote 21, which addresses negligent plaintiffs. The Empire text at 398 F.2d at 217 speaks to a situation where “ ‘two parties are responsible for injury to a third' ” and hence " 'each is primarily liable for one-half the damages,' " the two responsible parties " 'should each pay one-half the damages,’ " and if that cannot be collected from one, the other will be obligated to make up the deficiency. Such a scenario obviously contemplates a plaintiff not guilty of any causative fault. Moreover, Empire’s text at 398 F.2d at 217 likewise includes the rehearing language that what was said in that part of the original opinion “was apropos only to those instances where ... an innocent third party is injured by the mutual fault of vessels."

. The United States had not impleaded Meisner. Id. at 1068.

. And, this is repeated at the end of the opinion where the court says: “We vacate his [the district court's] allocation of liability, however, and remand the case to allow him to reallocate liability between Drake and the United States without considering the responsibility of Meisner.” Id. (emphasis added).

. The judgment as finally entered awarded Hawn $29,700 against Pope & Talbot (87)6% of Hawn's $36,000 total damages) and awarded Pope & Talbot $8,331.35 in contribution against Haenn. The $8,331.35 was calculated as being the sum of all LHWCA compensation and medical payments previously made by Haenn to Hawn ($5,881.35) plus the maximum remaining amount which Haenn could owe to Hawn in the future as LHWCA compensation ($2,450). Id., 100 F.Supp. 338.

. In Halcyon, Baccile, a ship repairman employed by Haenn, sued Halcyon for injuries incurred on its vessel. Halcyon brought in Haenn; by agreement of all parties, a $65,000 judgment was rendered for Baccile against Halcyon. A jury found Haenn 75% at fault and Halcyon 25%, and the district court granted Halcyon judgment for contribution against Haenn in the amount of $32,500. Baccile v. Halcyon Lines, 89 F.Supp. 765 (E.D.Pa.1950). The Court of Appeals reformed the judgment so that the amount of contribution awarded Halcyon could not exceed the amount Haenn could have been compelled to pay Baccile under the LHWCA had he elected to claim compensation thereunder. Baccile v. Halcyon Lines, 187 F.2d 403 (3d Cir.1951). Haenn and Halcyon were both granted review by the Supreme Court, which held that Halcyon was not entitled to any contribution. The Court noted that: "Where two vessels collide due to the fault of both, it is established admiralty doctrine that the mutual wrongdoers shall share equally the damages sustained by each, as well as, personal injury and property damage inflicted on innocent third parties.” Halcyon, 342 U.S. at 284, 72 S.Ct. at 279. It went on to observe that it had never expressly authorized contribution in noncollision cases, but that several lower courts had. Id. n. 5. However, it further noted that "[bjoth parties claim that the decision below limiting an employer's liability for compensation to those uncertain amounts recoverable under the Harbor Workers' Act is impractical and undesirable." Id. 342 U.S. at 284, 72 S.Ct. at 279. Although recognizing that "[t]o some extent courts exercising jurisdiction in maritime affairs have felt freer than common-law courts in fashioning rules,” id. 342 U.S. at 285, 72 S.Ct. at 280 (footnote omitted), it declined to fashion a contribution rule in the case before it. It then called attention to the LHWCA provisions for liability without fault, scheduled contributions and abolition of contributory fault and assumption of risk. Id. It noted that were contribution available, it would be a question whether "the amount of contribution should be limited by the Harbor Workers’ Act.” Id. It concluded by stating, “In view of the foregoing, and because Congress while acting in the field has stopped short of approving the rule of contribution here urged, we think it would be inappropriate for us to do so.” Id. 342 U.S. at 287, 72 S.Ct. at 280-281.
Subsequently, in Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), the Court allowed contribution in a noncollision case, relying on the general maritime law collision cases, id. 417 U.S. at 108-112, 94 S.Ct. at 2176-2177, and in effect holding that Halcyon was entirely driven by the fact that contribution there was sought from the LHWCA employer and that Halcyon was limited to that *1166 circumstance. Id. 417 U.S. at 110-114, 94 S.Ct. at 2177-2178.

.The Court stated:
"A weakness in this ingenious argument is that § 33 of the Act has specific provisions to permit an employer to recoup his compensation payments out of any recovery from a third person negligently causing such injuries. Pope & Talbot's contention if accepted would frustrate this purpose to protect employers who are subjected to absolute liability by the Act. Moreover, reduction of Pope & Talbot’s liability at the expense of Haenn would be the substantial equivalent of contribution which we declined to require in the Halcyon case." Pope & Talbot, 346 U.S. at 412, 74 S.Ct. at 206.

. Pope & Talbot likewise rejected the notion that Pennsylvania law — which barred any recovery for any degree of contributory negligence— should apply. Id. 346 U.S. at 409-410, 74 S.Ct. at 205. It further refused to overrule Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and rejected the suggestion that a "Sieracki-seaman” could not recover for vessel negligence as he was a species of seaman but was not covered by the Jones Act. Id. 346 U.S. at 410-414, 74 S.Ct. at 206-207.

. Moreover, as neither Pope & Talbot's nor Haenn's percentage of fault was found, it was not possible to compare Hawn’s percentage of fault to Pope & Talbot's alone, as distinguished from Pope & Talbot's and Haenn’s together.

. The general maritime law cases cited by Edmonds, 443 U.S. at 260 n. 7, 99 S.Ct. at 2756 n. 7, are Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); Halcyon; The Atlas; and The luniata. In the first three of these, the plaintiff was not at fault. That was also the situation in The Juniata so far as concerns the libel by the United States. In the libel by Pursglove in The Juniata, the plaintiff was at fault, but there was only one other actor at fault. None of these cases could possibly have presented — and none purported to address, even in dicta — the issue now before us. This is also true as respects the common law authority cited in this regard by Edmonds. Id. 443 U.S. at 259-260 & n. 8, 99 S.Ct. at 2756 & n. 8.

. Mitchell states: " '[i]t is not to be thought that a question not raised by counsel or discussed in the opinion of the court has been decided merely because it existed in the record and might have been raised or considered.” Id. See also Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925), where the Court stated:
"We do not stop to inquire whether all or any of them [prior Supreme Court decisions cited by appellant] can be differentiated from the case now under consideration, since in none of them was the point here at issue suggested or decided. The most that can be said is that the point was in the cases if any one had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."

. Cf. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 789-93, 69 S.Ct. 1317, 1321-22, 93 L.Ed. 1692 (1949); Rohde v. Southeastern Drilling Co., Inc., 667 F.2d 1215, 1217 (5th Cir.1982).

. This is also the situation respecting DOHSA, as this case involves neither a death nor any wrong committed (or injury suffered) "on the high seas."

. See, e.g., New Orleans Public Belt R. Co. v. Wallace, 173 F.2d 145 (5th Cir.1949) (where railroad employee’s estate sues employer railroad and a third party, jurisdiction over plaintiff's suit against the third party depends on diversity); Ft. Worth Denver Railway Company v. Threadgill, 228 F.2d 307, 311-312 (5th Cir.1955) (state law, not FELA, governs plaintiff's right to recover from third party and defendant railroad's right to recover indemnity or contribution from third party); Kennedy v. Pennsylvania Railroad Company, 282 F.2d 705, 709 (3d Cir.1960) (same).

. DOHSA was likewise passed in 1920.

. The three states were Mississippi, Georgia, and Nebraska. There was not a fourth until 1931, when Wisconsin joined.

. Indeed, as we have seen, there is no showing that even as of today there is any such clearly established rule under the FELA.

. These three cases are Johnson v. National Steel & Shipbuilding, 742 F.Supp. 1062, 1065 (S.D.Cal.1990); Texaco v. Addison, 613 So.2d 1193, 1202 (Miss.1993); and, Dicola v. American Steamship Owners Mut. Protection and Indem. Ass’n, Inc., 170 B.R. 222, 235 (S.D.N.Y.1994).

.Joia properly recognized, however, that Ed-monds was "not controlling” and that "the narrow holding of Edmonds does not govern a seaman’s action.” Joia at 916.

. On subsequent appeal Ebanks became Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540 (11th Cir.1987), which, as previously noted, led us in Hernandez (and subsequent cases) into an overbroad reading of Edmonds and consequent erroneous rejection of the proportionate share settlement credit rule of Leger.

. The majority takes comfort from the fact that Penrod does not challenge its interpretation of the Jones Act. But, as this is not a Jones Act case, we are certainly not bound by what Penrod may believe to be a tactically wise concession in respect to a hypothetical case not before us. See, e.g., Equitable Life Assur. Soc. of U.S. v. MacGill, 551 F.2d 978, 983 (5th Cir.1977) ("it is well settled that a court is not bound to accept as controlling stipulations as to questions of law”); Strauss v. United States, 516 F.2d 980, 982 (7th Cir.1975) (“concessions ... do not, at least as to questions of law that are likely to affect a number of cases ... beyond the one in which the concessions are made, relieve this Court of the duty to make its own resolution of such issues”).

. The majority argues (majority op. fh. 23) that the approach of the UCFA and Apportionment of Liability is substantively inconsistent with that of this dissent because under the former reallocation occurs only if and to the extent that recovery is unenforceable against one (or more) of multiple defendants. This analysis, however, ignores the fact that under the UCFA and Apportionment of Liability a defendant is never made ultimately responsible to the negligent plaintiff for a greater amount than this dissent would provide unless the defendant can actually collect any excess over that amount from co-defendants under the same judgment. Thus, it necessarily follows tihat the only meaningful difference between the UCFA and Apportionment of Liability, on the one hand, and this dissent, on the other, is that in the former a defendant is initially assigned the duty of trying to collect under the judgment from the other defendants; if he is able to do so, he in effect passes along to the plaintiff (or he retains for himself and the plaintiff is allowed to retain from him) any excess over the maximum this dissent would hold him liable for; if he is not able to do so, the plaintiff's recovery from him is proportionately diminished (but not below his maximum liability as calculated by this dissent). In other words, the only meaningful, bottom-line difference between the UCFA-Apportionment of Liability approach and that of this dissent is that under the former the defendant, as to amounts in excess of his maximum liability as calculated by this dissent, is made the plaintiff’s collection agent for judgment amounts owed by other defendants.
It should also be noted that under the UCFA and Apportionment of Liability only the fault of parties to the action (and those who have settled with the plaintiff) is considered. The effect of this is that the fault of nonparties is allocated in the original judgment between the plaintiff and each defendant precisely as this dissent would. If the plaintiff wants an actor to be a party, it is his burden to see to it that that actor is before the court and subject to its jurisdiction, and if the plaintiff does not do this, then he alone is his own collection agent as to any liability of that actor, all just as under this dissent.

. Of course, under this dissent's proposal, as applied to the instant case where plaintiff Coats is twenty percent negligent, Penrod is twenty percent negligent, and MIS is sixty percent negligent, Coats would be entitled to recover (and retain) as much as fifty percent of his total damages from Penrod, whether or not MIS was (or became) insolvent, and Penrod would be at total, sole risk and expense to collect contribution from MIS for amounts Penrod paid in excess of twenty percent of Coats’ total damages. Similarly, Coats would be entitled to recover (and retain) as much as seventy-five percent of his total damages from MIS, whether or not Penrod was (or became) insolvent, and MIS would be at total, sole risk and expense to collect contribution from Penrod for amounts MIS paid in excess of sixty percent of Coats’ total damages. Coats, however, would in no event be able to collect from Penrod and MIS together more in total than eighty percent of all his damages.

. It is recognized that Apportionment of Liability prefers the UCFA reallocation approach to that of this writer's dissent in Simeon, principally on the basis that the method of calculation stated in the Simeon dissent (calculate each defendant's maximum liability by comparing his percentage of fault to plaintiff's percentage of fault; subtract first defendant’s maximum liability from plaintiff’s maximum recovery, the result being second defendant’s several liability; subtract second defendant’s maximum liability from plaintiff's maximum recovery, the result being first defendant's several liability; add the several liability of first defendant and that of second defendant and subtract the total from plaintiff's maximum recovery, the result being the joint and several liability of the two defendants) does not work when there are three or more defendants. Apportionment of Liability at 254-55. Apportionment of Liability gives the example of a plaintiff and three defendants each twenty-five percent at fault. Id. While this is an accurate criticism of the simplified method of computation set forth in the Si-meon dissent — which was basically designed for use in two-defendant situations — the formulas set out in the appendix hereto adequately cover three (and more) defendant situations. For instance, in paragraph 1 (d) of the appendix, example 2 calculates the appropriate form of judgment (using the several and joint and several liability format) for an instance where the plaintiff and each of three defendants is twenty-five percent at fault, and plaintiff's total damages are $100,000, namely each of the three defendants is severally liable for $12,500 and all three of them are together also jointly and severally liable for $37,500. The real point, however, as previously explained in the text (Mechanics of Judgment Damages Allocation), is that formulas do not really need to be used at all; it suffices for the judgment to merely provide that the negligent plaintiff in any event recover no more from any one of the defendants than the amount which equals the fraction of plaintiff's total damages represented by that defendant's percentage of the total fault of all found at fault divided by the total of that defendant’s said percentage and the plaintiff’s percentage of the total fault of all found at fault. That is simple and easily accomplished.
Apportionment of Liability also notes that the Simeon dissent approach requires "the plaintiff to pursue enforcement of the judgment against all solvent defendants in order to recover the full amount,” id. at 254, but does not expressly characterize this as undesirable. As previously observed, Apportionment of Liability does provide for "reallocation” (including to the negligent plaintiff) of any defendant's equitable share in the original judgment when it is then known that such defendant is insolvent or immune or the like. And, Apportionment of Liability does not exhibit any awareness of the above-discussed long-standing admiralty practice under which the judgment against multiple defendants at fault is initially against them severally, as explained in, e.g., The Hudson, 15 F. 162, 164 (S.D.N.Y.1883).